UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PATRICK MENDEZ,
*on behalf of himself and all other employees similarly situated,*

                                  *Plaintiffs,*

v.

THE RADEC CORPORATION,
MARK SHORTINO, RAYMOND SHORTINO,
McMICHAEL ELECTRICAL CONTRACTORS,
ONSITE COMMERCIAL STAFFING, ABECK
ELECTRICAL CONTRACTORS, INC., ADECCO
TECHNICAL, CTS COMPANIES, INC., METRO
FINANCIAL SERVICES, ITH STAFFING,
TECHENGINEERING SERVICES, INC., TEK
SYSTEMS *and* TRADESOURCE,

                                  *Defendants.*

AMENDED
CLASS ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL

Civil Action
No. 03-CV-6342L(F)

## NATURE OF CLAIM

1. This is a proceeding for declaratory relief and monetary damages to: redress the deprivation of rights secured to plaintiff, Patrick Mendez individually, as well as all other employees similarly situated, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"); and under the New York Labor Law, for failure to pay promised wages and other violations to Patrick Mendez individually, as well as all other employees similarly situated; and for the retaliatory termination of Mr. Mendez by defendants.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343 (3) and (4) conferring original jurisdiction upon this Court of any civil action

to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights; under 28 U.S.C. § 1337 conferring jurisdiction of any civil action arising under any Act of Congress regulating interstate commerce; and under the Declaratory Judgment Statute, 28 U.S.C. § 2201.

3. This Court's supplementary jurisdiction of claims arising under New York State Labor Law and for contractual violations is also invoked.

4. Venue is appropriate in the Western District of New York since the allegations arose in this district and plaintiff resides in this district.

## CLASS ACTION ALLEGATIONS

5. The claims arising under New York State Labor Law are properly maintainable as a class action under Federal Rule of Civil Procedure 23.

6. The class action is maintainable under subsections (1), (2) and (3) of Rule 23(b).

7. The class size is believed to be over 50 employees.

8. The Named Plaintiff, Patrick Mendez, will adequately represent the interests of the class members because they are similarly situated to the class members and their claims are typical of, and concurrent to, the claims of the other class members.

9. There are no known conflicts of interest between the Named Plaintiff and the other class members.

10. The class counsel, Dolin, Thomas & Solomon LLP, is qualified and able to litigate the class members' claims.

11. The class counsel concentrates its practice in employment litigation, and its attorneys are experienced in class action litigation, including class actions arising under

federal and state wage and hour laws.

12. Common questions of law and fact predominate in this action because the claims of all class members are based on whether The Radec Corporation's practice of not paying promised wages and not paying nonexempt employees for all hours worked and/or statutory overtime for hours worked over 40 per week violates New York State Labor Law.

13. The class action is maintainable under subsection (3) of Rule 23(b) because common questions of law and fact predominate among the class members and because the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## PARTIES

### A. Defendants

14. Defendant The Radec Corporation ("Radec") is a New York Corporation and has its principal place of business at 135 Gould Street, Rochester, NY 14610.

15. Radec is a retailer engaged in the sale of goods crossing interstate lines.

16. Radec is an enterprise engaged in interstate commerce whose annual gross volume of sales made is not less than $500,000.

17. Defendant Raymond Shortino is President of Radec and personally participated in the unlawful actions alleged in this complaint.

18. Upon information and belief, Raymond Shortino is one of the ten largest shareholders, as determined by the fair value of his beneficial interest, of Radec.

19. This complaint provides written notice that, pursuant to § 630 of the New York Labor Law, plaintiffs intend to hold Raymond Shortino liable for all unpaid wages and salaries.

20.   Therefore, Defendant Raymond Shortino is individually liable as a defendant under the New York Labor Law, the Fair Labor Standards Act and the Business Corporation Law.

21.   Defendant Mark Shortino is Vice President of Radec and personally participated in the unlawful actions alleged in this complaint.

22.   Upon information and belief, Mark Shortino is one of the ten largest shareholders, as determined by the fair value of his beneficial interest, of Radec.

23.   This complaint provides written notice that, pursuant to § 630 of the New York Labor Law, plaintiffs intend to hold Mark Shortino liable for all unpaid wages and salaries.

24.   Therefore, defendant Mark Shortino is individually liable as a defendant under the New York Labor Law, the Fair Labor Standards Act and the Business Corporation Law.

25.   Defendants McMichael Electrical Contractors, Onsite Commercial Staffing, Abeck Electrical Contractors, Inc., Adecco Technical, CTS Companies, Inc., Metro Financial Services, ITH Staffing, Techengineering Services, Inc., Tek Systems and Tradesource are joint employers of the class members and are jointly liable for violations of the FLSA and New York Labor Law.

**B.   Plaintiffs**

*Named Plaintiff*

26.   Named plaintiff Patrick Mendez is a resident of the State of New York, residing at 2 East End Way, Rochester, NY 14604.

27.   At all relevant times, Mr. Mendez was an employee under the FLSA, the New York Labor Law, § 630 of the Business Corporation Law and New York common law.

## *Class Members*

28.     The Class Members are those employees of defendants who were promised wages that were not paid, and those individuals suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.

29.     Specifically, the class includes individuals that defendants suffered or permitted to work and were also employed by other entities including, without limitation, individuals jointly employed by those defendants commonly known as "temporary placement agencies."

30.     For ease of administration, the class is divided into two subclasses.

31.     **Subclass 1** is composed of Class Members whose claims focus on the defendants' failure to pay the wages as promised.

32.     To further assist in administration, Subclass 1 is divided into further subclasses based on what specific wages or benefits were denied.

33.     *Subclass 1A* is comprised of those Class Members promised a per-hour pay increase but were not paid that per-hour increase as required by law.

34.     *Subclass 1B* is comprised of Class Members promised daily bonuses but were not paid daily bonuses as required by law.

35.     *Subclass 1C* is comprised of Class Members promised "straight time" payment for travel but were not paid travel time as required by law.

36.     *Subclass 1D* is comprised of Class Members promised reimbursement for travel expenses but were not paid those reimbursements as required by law.

37.     **Subclass 2** is composed of Class Members whose claims focus on the defendants' failure to pay regular and overtime pay at the rate required by law, and for the

defendants failure to maintain appropriate records.

38. To further assist in administration, Subclass 2 is divided into further subclasses based on what specific benefits were denied.

39. *Subclass 2A* is comprised of Class Members who were suffered or permitted to work hours and were not compensated for that time at regular or overtime rates by defendants as required by law.

40. *Subclass 2B* is comprised of Class Members suffered or permitted to travel to locations at which an overnight stay was expected, or traveled for special one-day assignments, and were not compensated for that travel by defendants as required by law.

41. *Subclass 2C* is comprised of Class Members who were promised wages including a per-hour increase, were suffered or permitted to work, and whose statutorily required regular and overtime rate of pay was not calculated to include those increases.

42. *Subclass 2D* is comprised of Class Members who were promised a daily bonus, were suffered or permitted to work, and whose statutorily required regular and overtime rate of pay was not calculated to include the daily bonus.

## FACTUAL BACKGROUND

A.   **Promised Payments**

43. Defendants routinely promised Class Members that the Class Members would receive a certain pay increase in their per-hour pay to induce those Class Members to complete a job.

44. Consistent with this practice, and as one example, in 2001 Mr. Mendez was promised a $3.00 an hour pay increase to work at one of defendants' remote job sites.

45. Other Class Members were also promised extra per-hour compensation to

induce the Class Member to work on a particular job.

46. The amounts promised generally fluctuated between $1.00 and $3.00 an hour.

47. In addition to per-hour increases, defendants also would promise Class Members daily bonuses for working at other job sites, which defendants inaccurately referred to as "per diem" payments.

48. Consistent with this practice, and as one example, Mr. Mendez was promised a daily bonus of $40.00 for every day he worked at defendants' remote job site.

49. Other Class Members were also promised extra daily bonuses at different levels to induce the employee to work on a particular job.

50. The amounts paid generally fluctuated between $20.00 and $40.00 a day.

51. Defendants routinely promised Class Members that the Class Members would be paid "straight time" for all hours traveled during their employment. ("Straight time" for such travel is illegal when such travel causes an employee's hours to exceed 40 in a week.)

52. Consistent with this practice, and as one example, in 2001 Mr. Mendez was promised payment for travel time when he went to another job site.

53. Other Class Members were also promised straight time for travel to work on a particular job.

54. Defendants also promised Class Members reimbursement for tolls and other travel expenses.

55. Consistent with this practice, and as one example, in 2001 Mr. Mendez was promised payment reimbursement for tolls and other travel expenses while traveling to another job site.

56. Other Class Members were also promised reimbursement for tolls and other

- 8 -

travel expenses.

57. In return for the above promises, Mr. Mendez and the other Class Members agreed to work at defendants' job site.

**B.   Defendants' Failure to Make Promised Payments**

58. The defendants failed to make the payments they promised to Subclass 1A Members for the per-hour increase.

59. The defendants failed to make the payments they promised to Subclass 1B Members for daily bonus amounts.

60. The defendants failed to make the payments they promised to Subclass 1C Members for travel time.

61. The defendants failed to make the payments they promised to Subclass 1D Members for reimbursements for tolls and other travel expenses.

62. The defendants failed to pay the Subclass 1 Members their full wages weekly, bi-weekly, or even monthly.

63. The defendants failed to pay the Subclass 1 Members their full salary in cash.

64. By not paying the Subclass 1 Members their wages, defendants made deductions from the Class Members wages.

**C.   Defendants' Failure to Make Overtime Payments**

65. Defendants additionally failed to pay Class Members regular pay and statutorily required overtime for the hours the Class Members worked.

66. In the case of Mr. Mendez, and Subclass 2A Members, the defendants did not compensate Subclass 2A Members for the hours those Subclass Members worked with regular pay, or with their statutorily required overtime pay.

- 8 -

67. Defendants knew, or should have known, that such "off-the-clock" work was being done.

68. As one example, in Mr. Mendez's case, the defendants told Mr. Mendez to repeatedly work off-the-clock.

69. In the case of Mr. Mendez, and Subclass 2B Members, the defendants did not compensate Subclass 2B Members for the hours when those Subclass Members traveled to another job site requiring an overnight stay and for travel time on special one-day assignments in another city with regular pay, or with their statutorily required overtime pay.

70. In the case of Mr. Mendez, and Subclass 2C Members, the defendants excluded from the calculation of overtime pay the per-hour increase promised to those Class Members as part of their wages.

71. In the case of Mr. Mendez, and Subclass 2D Members, the defendants excluded from the calculation of overtime pay the daily bonus payments promised to those employees.

**D.    Defendants' Failure to Keep Statutorily Required Records**

72. The defendants failed to keep records required by the New York Labor Law and the FLSA.

**E.    Retaliation**

73. Mr. Mendez protested repeatedly to defendants that they were not paying him the sums required by law.

74. In a final meeting between Mr. Mendez, Raymond Shortino and Mark Shortino in or around December of 2002, the individual defendants told Mr. Mendez that if he was going to continue to make an issue about the wage and benefits payments, they would

pay him for part of the amount defendants owed and that he would have to then leave defendants employ for insisting on payment.

75. Mr. Mendez was given part of the money owed and was immediately terminated.

### FIRST CAUSE OF ACTION
#### *FLSA*

76. Plaintiffs reallege the above paragraphs as if fully restated herein.

77. Defendants willfully violated their obligations under the FLSA and are liable to plaintiffs.

### SECOND CAUSE OF ACTION
#### *New York Labor Law*

78. Plaintiffs reallege the above paragraphs as if fully restated herein.

79. Defendants willfully violated their obligations under the New York Labor Law and are liable to plaintiffs.

### THIRD CAUSE OF ACTION
#### *Breach of Contract*

80. Plaintiffs reallege the above paragraphs as if fully restated herein.

81. Defendants violated their obligations by breaching a contract executed with plaintiffs.

### FOURTH CAUSE OF ACTION
#### *Breach of Implied Covenants of Good Faith*

82. Plaintiffs reallege the above paragraphs as if fully restated herein.

83. Defendants are liable to plaintiffs for breach of the implied covenants of good faith.

## FIFTH CAUSE OF ACTION
*Unjust Enrichment*

84. Plaintiffs reallege the above paragraphs as if fully restated herein.

85. Defendants violated their obligations by breaching a contract executed with plaintiffs.

## SIXTH CAUSE OF ACTION
*Promissory Estoppel*

86. Plaintiffs reallege the above paragraphs as if fully restated herein.

87. Defendants are liable to plaintiffs for promissory estoppel.

## SEVENTH CAUSE OF ACTION
*Conversion*

88. Plaintiffs reallege the above paragraphs as if fully restated herein.

89. Defendants are liable to plaintiffs for conversion.

## EIGHTH CAUSE OF ACTION
*Reformation*

90. Plaintiffs reallege the above paragraphs as if fully restated herein.

91. Plaintiffs are entitled to reformation of the contract under the terms presented to them.

## NINTH CAUSE OF ACTION
*Fraud*

92. Plaintiffs reallege the above paragraphs as if fully restated herein.

93. Defendants are liable to plaintiffs for fraud.

## TENTH CAUSE OF ACTION
*Misrepresentation*

94. Plaintiffs reallege the above paragraphs as if fully restated herein.

95. Defendants are liable to plaintiffs for misrepresentation.

## ELEVENTH CAUSE OF ACTION
*Tortious Interference With a Contractual Relationship*

96. Plaintiffs reallege the above paragraphs as if fully restated herein.

97. Defendants are liable to plaintiffs for tortious interference with plaintiffs' contractual terms with the defendants.

**WHEREFORE**, plaintiffs demand judgment against defendants in their favor and that they be given the following relief:

(a) an order preliminarily and permanently restraining defendants from engaging in the aforementioned pay violations;

(b) an award of the value of plaintiffs' unpaid wages, including fringe benefits;

(c) liquidated damages under the FLSA equal to the sum of the amount of wages and overtime which were not properly paid to plaintiffs (plaintiffs expressly waive their rights to liquidated damages or any other statutory penalty provided under New York law);

(d) an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating plaintiffs' rights;

(e) an award of pre- and post-judgment interest; and

(f) such other and further legal or equitable relief as this Court deems to be just and appropriate.

## JURY DEMAND

Plaintiff demands a jury to hear and decide all issues of fact.

- 13 -

Dated: August 9, 2004

                                                   **DOLIN, THOMAS & SOLOMON LLP**

By:  *[signature]*
J. Nelson Thomas, Esq.
Graig F. Zappia, Esq.
*Attorney for Plaintiffs*
135 Corporate Woods, Suite 130
Rochester, New York 14623
Telephone: (585) 272-0540