UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PATRICK MENDEZ, *ON BEHALF OF HIMSELF AND ALL*
*OTHER EMPLOYEES SIMILARLY SITUATED*,

                        PLAINTIFFS,

v.

THE RADEC CORPORATION, *ET AL.*,

                    DEFENDANTS.

---

MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO
DECERTIFY

CIVIL ACTION NO.
03-CV-6342L(F)

## PRELIMINARY STATEMENT

On November 22, 2005, the Court certified an FRCP Rule 23 class for Plaintiffs' New York Labor Law claims. Since that time, other than moving to have themselves appointed as class counsel, Plaintiffs' attorneys have done little to move this case forward. Moreover, Class Counsel's actions (e.g., moving for summary judgment before class certification) and inactions (e.g., failing to seek court-ordered notice, failing to pursue alleged joint employers, and failing to file an FLSA consent for the named plaintiff) have damaged the class. Class Counsel have been on notice of these deficiencies for over 1 ½ years, but have taken no action. Thus, Class Counsel is not adequately representing the class and the Court should decertify the class.

Additionally, the Court's grant of partial summary judgment to Plaintiffs, as well as the parties' attempts to stipulate to certain factual matters prior to trial, demonstrate the predominance of individual issues in this case. More particularly, individual analysis of each putative class member's particular work schedule is required in order to determine which, if any, of the claims made in this case they might have (e.g. off-the-clock work, missed/interrupted meal periods, travel time, calculation of regular rate, etc.). Given this predominance of individualized inquiries, class treatment is not appropriate and the Court should decertify the class.

**STATEMENT OF FACTS**

The facts pertinent to this motion are set forth in the Weissflach Declaration.  Those facts

are summarized below and/or discussed within the points to which they pertain.

**I.      Background Information**

On July 16, 2003, Plaintiff Patrick Mendez commenced this action by filing a Complaint

in the U.S. District Court for the Western District of New York.  *See* Docket No. 1.  In the

Complaint, Mendez alleged various claims under the Fair Labor Standards Act (FLSA), New

York Labor Law and common law for the alleged failure to pay wages, travel expenses and

overtime against his former employer, The Radec Corporation.

On August 16, 2004, Mendez amended the Complaint to name ten (10) electrical

subcontractors and temporary agencies (from whom Radec allegedly obtained workers) as co-

defendants, allegedly on the theory that they were joint employers of the putative class members.

Amended Complaint (Dkt. No. 111), ¶ 25 (Weissflach Decl, Exh. A).  This was likely done in

response to Radec's defense that Mendez had failed to name indispensable parties.  *See* Dkt. No.

8, ¶ 109.  However, Mendez never filed proof of service with respect to any of those

subcontractors and/or temporary agencies, and in fact stipulated to dismiss one of the electrical

contractors from the case.  *See* Dkt. Nos. 127 and 193.

On December 19, 2003, Mendez filed a Motion to Certify Class under Rule 23 and a

Motion for Notice under the FLSA.  *See* Docket Nos. 12 and 19.  On February 26, 2004, the

Court denied Mendez's Motion for Class Certification without prejudice to renew and granted

Mendez's Motion for Notice under the FLSA.  *See* Docket No. 45.  Seventy-six (76) individuals

filed consents to proceed as plaintiffs in the FLSA portion of this case.  However, named

plaintiff Patrick Mendez never filed a consent.

After discovery, Mendez filed a Motion for Partial Summary Judgment on the issues of Radec's alleged failure to (1) compensate employees for lunch breaks, (2) compensate employees for travel time to and from "out-of-town" projects, and (3) include certain alleged "bonuses" as part of the regular rate for calculation of overtime.  *See* Docket Nos. 131-153. Mendez contemporaneously filed a Renewed Motion for Rule 23 Class Certification for certain claims under the New York Labor Law.  *See* Docket No. 134.  Radec filed opposition papers to the Motion for Partial Summary Judgment and Renewed Motion for Rule 23 Class Certification (Dkt. Nos. 156-174) and also moved to decertify the FLSA Collective Action.  *See* Docket No. 183.  On November 22, 2005, the Court issued its Decision and Order regarding the three motions.  *See Mendez v. The Radec Corp.*, 232 F.R.D. 78 (W.D.N.Y. 2005).

II.    **The Court's Decision on Mendez's Motion for Class Certification**

Despite allegations that there were two classes, each divided into four subclasses (*see* Amended Complaint, ¶¶ 31-42), Mendez moved for class certification only with respect to the second class, which includes claims under the New York Labor Law for off-the-clock work (e.g., alleged interrupted meal periods) (Amended Complaint, ¶ 39), travel time to out-of-town projects (Amended Complaint, ¶¶ 40, 69), alleged failure to include per hour increases in overtime calculations (Amended Complaint, ¶¶ 41, 70), and alleged failure to include daily bonuses in overtime calculations (Amended Complaint, ¶¶ 42, 71).

The Court rejected Radec's argument that class certification (and FLSA collective status) was inappropriate because individualized inquiry was necessary for these claims.  However, the Court did explicitly recognize that individualized determinations were necessary to determine the meal period claims.  Moreover, even as to those claims where the Court granted partial summary judgment, the Court could not determine whether any particular putative plaintiff (if any) was

owed anything, thus requiring individualized proof.  However, the Court viewed these

individualized inquiries as relevant to damages only (232 F.R.D. at 92-94):

> The only "individual" issues would seemingly relate to such matters as whether a particular class member had spent the bulk of his lunch break working, had traveled to an out-of-town job site during normal working hours, etc.  In almost any class action in which there are claims for damages, though, each plaintiff must establish his entitled to damages and the extent of those damages.  That alone does not mean a class should not be certified…. [S]ome issues related to damages may require individualized proof, but that is not a basis for finding that Rule 23(b)(3)'s predominance criterion has not been met. *Visa Check/Mastermoney, 280 F.3d at 139.*

On February 22, 2006, Dolin Thomas & Solomon LLP filed a motion seeking to be

appointed class counsel in this matter.  Dkt. Nos. 203-206.  While Radec did not oppose the

motion, it specifically reserved the right to challenge adequacy of class counsel at a later date.

*See* Order Appointing Class Counsel (Dkt. No. 209) and Weissflach Declaration (Dkt. No. 208).

## III.      Post-Certification Events

Throughout this case, including post-certification, the parties have discussed settlement,

but have been too far apart to resolve this matter.  However, as part of the settlement process,

Radec allowed Plaintiffs' counsel to review its financial records with an accountant, to:  (1)

support its assertion that it could not afford a settlement anywhere near that sought by Plaintiffs

and still stay in business (and thus continue to employee many plaintiffs); and (2) to demonstrate

that it would never be able to satisfy a large judgment, if one could be obtained by Plaintiffs.

Despite this information putting them on notice that they may not obtain any recoverable

judgment from the Radec Defendants, Plaintiffs and their counsel never made any attempt to

serve the temporary agencies and subcontractors with the Amended Complaint, despite alleging

that such agencies and contractors were "joint employers" of the plaintiffs and "jointly liable for

violations of the FLSA and New York Labor Law."  Amended Complaint, ¶ 25.

4

The parties also attempted to discuss how to proceed going forward, including possible trial stipulations, given the class certification and summary judgment decision.  To this end, pursuant to a stipulation of the parties (Dkt. No. 212), Radec's counsel sent a letter to Plaintiffs' counsel on December 22, 2006 outlining a variety of issues in the case and proposing possible stipulations and methods of moving the case forward.  *See* Weissflach Decl., Exh. E.[1]

This letter begins by putting Plaintiffs' counsel on notice concerning serious deficiencies with respect to their class/collective claims, including their failure to file a consent for Mendez, their failure to seek a court-approved notice for the FRCP 26(b)(3) class that was certified, and the resulting limited applicability of the partial summary judgment they achieved:

> As an initial matter, there are some class/collective issues that we should resolve prior to proceeding further in this case.  First, I have searched our file and have been unable to locate a filed consent from Mr. Mendez.  As you know, even named plaintiffs must file consents in FLSA actions in order to satisfy the statute of limitations.  If a consent was filed on his behalf, then please send me a file-stamped copy of that consent.  If not, then all of his FLSA claims would be time-barred.  Additionally, in the absent of consent and no possibility of an FLSA recovery, there is a serious question as to whether Mr. Mendez is an adequate and/or appropriate class/collective representative.  A decertification motion may very well be warranted in any event, given recent Second Circuit case law.

> Additionally, despite the Court's order certifying the class, you have not submitted any notice for Court approval, which is a due process requirement under FRCP 23(b)(3) and 23(c)(2)(B).  Moreover, it appears that you jumped the gun in moving for summary judgment simultaneously with a motion for class certification.  In the absence of the required notice, your summary judgment (such as it is) affects only the named plaintiff and/or FLSA opt-ins.  That summary judgment order is not applicable to all other members of the putative class.  *See* FRCP 23(c)(3).  I think you will find many cases making this principle quite clear.

---

[1]  These communications between counsel regarding possible stipulations and in some cases settlement are not being offered for purposes relating to liability or calculation of disputed damages amounts.  Rather, these communications are offered for other purposes, e.g., that Class Counsel has been on notice for months concerning the deficiencies claimed by the Radec Defendants.  Accordingly, the use of these letters is proper under FRE 408.

Radec also provided a list of all of the out-of-town projects that were at issue for purposes of the travel time claims, along with a list of the class and FLSA collective plaintiffs who worked on each project.  This was done for the purpose of coming to agreement on a process to resolve the outstanding issues concerning this claim, including:  (1) whether individual projects had "normal working hours," (2) if so, what those normal working hours were for each project, and (3) whether any class plaintiffs traveled during those normal working hours.  The list of out-of-town projects and employees/workers attached to the December 22, 2006 letter demonstrates that trial in this matter will require project-by-project and, more importantly, plaintiff-by-plaintiff inquiry to determine whether Radec is liable for any unpaid wages.

Plaintiffs' counsel responded by letter on January 22, 2007.  *See* Weissflach Decl., Exh. F.  The class issues mentioned in the December 22, 2006 (failure to file Mendez consent and failure to seek class notice) were not addressed at all by Plaintiffs' counsel.  With respect to the other issues, Plaintiffs' counsel did not agree to any of Radec's proposed resolutions and did not create any lists or perform any calculations of their own.  However, Plaintiffs' counsel did point out a few perceived omissions from Radec's lists.

Radec's counsel responded by letter to the January 22, 2007 letter on February 2, 2007.  *See* Weissflach Decl., Exh. G.  With respect to the class issues, Radec's counsel noted that Plaintiffs' counsel had not addressed those points at all.  On the other issues, Radec's counsel pointed out that Plaintiffs' counsel was putting little effort into moving the case forward:

> Your response with respect to our detailed spreadsheets is disappointing and inadequate.  You clearly put little or no effort into reviewing the extensive information provided in discovery in order to reach agreement about alleged damages.  Instead, you have been consistently relying upon us to do all of the work, and then you vaguely state that our spreadsheets are "incomplete."  Yet, notwithstanding your assertion that you have reviewed the discovery documents, you do nothing other than list an "example" of what you believe are appropriate additions.  I will address those below, but your responsibility was to propose

specific additions to our spreadsheets.  We have provided you with all of the
instances where time sheets suggest straight time was paid for "travel time,"
which was based on an extensive review of time sheets and payroll records.  We
will not seek out additional instances because you insist they exist.  To the extent
you think you have found additional instances, please tell us that and we will
address such instances in due course.  Otherwise, we can simply proceed to trial
and you will have to prove all such instances where damages allegedly occurred,
which is what this entire process is designed to avoid.

After another unsuccessful settlement conference on April 2, 2007, Radec reported to the

Court by letter regarding the status of the case.  *See* Weissflach Decl., Exh. H.  At this time, the

Radec Defendants again noted for Plaintiffs' counsel the class issues that had been raised months

before, asking the Court to schedule a conference with respect to, *inter alia*:

Sending notice of this class action to putative plaintiffs (the Court certified a class
on November 22, 2005, but Plaintiffs have taken no steps to send notice) and
discussing the ramifications of the lack of notice on the posture of this case.

Exhibit H.

A year passed with Class Counsel taking no steps to move the case along and/or to

address the class issues noted above.  After the Court inquired about the status of the case,

Radec's counsel sent Class Counsel a letter, again raising the same class issues that had been

pointed out over a year earlier, and specifically raised the possibility that the Radec Defendants

might seek to decertify the class based on these issues.  Weissflach Decl., Exh. I.

On May 21, 2008, Radec's counsel talked to Mike Lingle of Dolin Thomas & Solomon.

However, Mr. Lingle was not familiar with the case and could not specifically address any

particular aspect of the previous correspondence between the parties.  When the class issues were

brought up, Mr. Lingle stated that he did not know anything about those issues and that he would

have to review the file.  Radec's counsel specifically told Mr. Lingle in this phone call that

Radec would file a motion to decertify the class.  Weissflach Decl., ¶ 61.

On June 26, 2008, Mr. Lingle and Radec's counsel spoke again.  While Mr. Lingle was a little more familiar with the file at that time, little or no progress was made in moving the case forward, principally because Mr. Lingle made no specific suggestions other than stating that the parties could present the "normal working hours" issue to the Court on "stipulated facts," without any suggestion as to what those facts might be.  He provided no specific response to the stipulations that Radec had proposed 1 ½ years ago (*e.g.*, stipulating to out-of-town projects, staff on those projects, and time records for those projects).  During this conversation, Mr. Lingle did not address the class issues (lack of Mendez consent and lack of notice) at all.

ARGUMENT

An order certifying a class may be altered or amended at any time prior to final judgment.  Fed.R.Civ.P. 23(c)(1)(C).  Indeed, the Second Circuit stated that courts are required to reassess their class rulings throughout the history of a case.  *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118-119 (2nd Cir. 1999) (citing cases).  Here, the Radec Defendants ask the Court to reassess its prior class ruling based in part on case law developed and events that occurred subsequent to that ruling.  Among the issues being raised by the Radec Defendants is the adequacy of class counsel.  Given that class counsel "serves in something of a position of public trust" (*see Alpine Pharmacy Inc. v. Chas. Pfizer & Co.*, 481 F.2d 1045, 1050 (2nd Cir. 1973)) it is all the more important for the Court to reassess the adequacy of counsel as the case progresses.

While prior case law suggested that a court should not consider the merits of a claim as part of the class certification process, the Second Circuit recently determined that a court's role with respect to a class certification motion is not lessened simply because there is overlap with issues going to the merits.  In *In re Initial Public Offering Securities Litigation*, 471 F.3d 24 (2d Cir. 2006), *rehearing denied*, 483 F.3d 70 (2d Cir. 2007), the Second Circuit clarified the

standards applicable to motions for class certification and concluded that "a district court may not grant class certification without making a determination that all of the *Rule 23* requirements are met." *In re IPO*, 471 F.3d at 40; *see also id*. at 41 (requiring "definitive assessment" of each class certification requirement, even if those issues overlap with merits issues).[2]

## I.     Class Counsel is not an Adequate Class Representative[3]

It is a "judge's obligation to insure that the plaintiff class is adequately represented throughout the litigation." *Foe v. Cuomo*, 892 F.2d 196, 198 (2nd Cir. 1989); *see also Key v. Gillette Co.*, 782 F.2d 5, 7 (1st Cir. 1986) ("The court has an ongoing duty to make sure that this requirement is complied with at all stages of the litigation.").  "Adequate representation is particularly important because of the *res judicata* implications of a class judgment.  If the case is not properly and vigorously conducted, either plaintiffs or defendants or both will suffer the consequences of being bound by the resulting judgment." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985); *see also Key*, 782 F.2d at 7 ("The district court's decertification ruling was really intended to protect absentee class members from the possible adverse res judicata effects of the case and to preserve for them the opportunity of presenting a better prepared case in the future.").

"'In determining the adequacy of counsel, the court looks beyond reputation built upon past practice and examines counsel's competence displayed by present performance.'" *In re*

---

[2]  Prior to *In re IPO*, courts in the Second Circuit applied a "some showing" standard, granting certification if there was a showing that some evidence supported the requirements set forth in Rule 23.  *In re IPO* rejects this standard (471 F.3d at 27, 41-42) and brings the Second Circuit standard in line with the standard applied in other circuits.  *See* 471 F.3d at 33.

[3]  Although discussed in the context of the adequacy of Class Counsel, two of the errors made by class counsel – moving for summary judgment before class certification and failing to send notice to the class – are so serious as to be separate and independent (jurisdictional) grounds for decertifying the class. *See* Points I.A and I.B *infra*.

*Towers Fin. Corp. Noteholders Litigation*, 177 F.R.D. 167, 171 (S.D.N.Y. 1997) (quoting *In re*

*Frontier Ins. Group Inc. Securities Litigation*, 172 F.R.D. 31, 44 (E.D.N.Y. 1997)).  In this case,

Class Counsel's inadequate performance includes:

- Class Counsel's simultaneous motions for partial summary judgment and class certification precluded any ruling from inuring to the benefit of the entire class, as the class had not yet been certified, nor had notice been sent;

- Class Counsel's failure to seek court-approved notice for the certified Fed.R.Civ.P. 26(b)(3) class, which not only precludes the simultaneous partial summary judgment decision from applying to the class, but also precludes a class of any kind under the New York Labor Law;

- Class Counsel's failure to serve the Amended Complaint against the temporary agencies and subcontractors alleged to be "joint employers" with Radec and therefore "jointly liable" under the FLSA and New York Labor Law;

- Class Counsel's failure to file an FLSA consent to proceed on behalf of the named Plaintiff, Patrick Mendez, which means not only that Mendez's FLSA claims are time barred – which would put him at odds with his own attorneys – but also that Mendez, who therefore has no FLSA claim, cannot be a representative of a collective under the FLSA because he cannot be "similarly situated" to the members of the collective;

- Class Counsel's failure to prosecute the case in any meaningful way for over two years, including failure to address the issues above when brought to their attention.

Class Counsel's performance during this case has not only been inadequate, but class counsel's

actions (and inactions) have disadvantaged and prejudiced class members.  The specific

deficiencies of class counsel and the deleterious effect on the class are discussed below.

### A.     Simultaneous Class Certification and Summary Judgment Motions

Class counsel moved for summary judgment at the same time as they moved for class

certification.  Thus, prior to any class being certified and, more importantly, prior to any notice

being sent to the class, a ruling on the merits was sought and obtained.  Case law demonstrates

that the "victory" obtained does not apply to the putative class and cannot be applied after the

fact to the class, particularly where no notice was sought by Class Counsel.  Even if such notice is sought now, it would be inappropriate and prejudicial to the Radec Defendants.

Federal Rule 23 was amended in 1966 to address "spurious" class actions and the problem of "one-way intervention," wherein a favorable decision on the merits is sought before class certification, thereby allowing putative class members "to intervene after a decision on the merits favorable to their interests, in order the secure the benefits of the decision for themselves, although they would presumably be unaffected by a favorable decision."  1966 Adv. Comm. Note to Fed.R.Civ.P. 23.  After the 1966 amendments, "one-way intervention is excluded."  *Id.* "To that end, Rule 23(c)(1) and 23(c)(2) were designed to operate in tandem to force class members to choose the binding effect of the judgment in advance of a decision on the merits." *Beale v. Edgemark Fin. Corp.*, 1995 U.S. Dist. LEXIS 15789, *8 (N.D.Ill. Oct. 20, 1995); *see also Bridges v. Blue Cross and Blue Shield Assoc.*, 1995 U.S. Dist. LEXIS 9477, *5 (D.D.C. Jan. 23, 1995) ("The 23(c)(2) notice requirement was designed to protect defendants in a 23(b)(3) class action from what courts have termed 'one-way' intervention, that is, allowing members of a Rule 23(b)(3) plaintiff class the opportunity to join an action after a favorable judgment has been rendered, while avoid the res judicata effect of an adverse judgment on the merits.") (citation omitted).  Thus, the intent of the Federal Rules is that the class certification decision (and notice to the class) be made prior to any decision on the merits.  Fed.R.Civ.P. 23(c)(1)(A) & 23(c)(3).

This issue often arises when a ***defendant*** files a dispositive motion prior to any class certification ruling.  Even though class issues should be determined before any ruling on the merits, courts have held that the prohibition against one-way intervention is intended to protect defendants and therefore that such protection can be waived by defendants.  Addressing the propriety of simultaneous dispositive and class certification motions, one court stated:

>Postponing a ruling on the merits until after class certification prevents absent class members from opting in or out depending on the outcome on the merits. The justification disappears where it is the defendant who is seeking a ruling on the merits simultaneous to class certification and courts have recognized the propriety of simultaneous rulings under that circumstance.  These courts note that the avoidance of one-way intervention is intended to protect the defendant.  There is no reason why the defendant cannot waive that protection and attempt to obtain a favorable decision which is not binding on the potential class members who were not afforded the opportunity to opt in or out of the class.

*Izaguirre v. Tankersley*, 516 F. Supp. 755, 757 (D.Or. 1981) (citations omitted); *see also Bridges*, 1995 U.S. Dist. LEXIS at *5 (defendant waives opportunity to have class certification and notice determined before merits if it moves for ruling on merits); *Ahne v. Allis-Chalmers Corp.*, 102 F.R.D. 147, 150-151 (E.D.Wis. 1984) (same).

Thus, a defendant may forego the *res judicata* benefits of class certification by moving for judgment on the merits prior to class certification (and notice), but any judgment obtained will apply only to the named plaintiff(s) and not to any putative class members.  *Izaguirre*, 516 F. Supp. at 757; *Caraluzzi v. Prudential Securities, Inc.*, 824 F. Supp. 1206, 1211 (N.D.Ill. 1993); *Illinois State Rifle Assoc. v. State of Illinois*, 717 F. Supp. 634, 639 n.12 (N.D.Ill. 1989).

The *Izaguirre* court, however, specifically noted that simultaneous rulings would not be appropriate "where the plaintiffs in a class action seek a ruling on the merits before class certification."  *Id*. (citations omitted); *see also Glodgett v. Betit*, 368 F. Supp. 211, 214-215 (D.Vt. 1973) (class action portion of case dismissed where plaintiff moved for summary judgment prior to class certification), *aff'd sub nom*., *Philbrook v. Glodgett*, 421 U.S. 707 (1975). In *Peritz v. Liberty Loan Corp.*, 523 F.2d 349 (7th Cir. 1975), the plaintiffs in a consumer loan lawsuit moved for summary judgment and later succeeded at trial on the question of whether a disclosure had been clear and conspicuous.  Only after trial did the district court determine that a class was appropriate and require notice to be sent.  The Seventh Circuit determined that

resolution of a merits issue prior to class certification and notice was not appropriate, and that by seeking resolution of the merits prior to class certification, plaintiffs "effectively precluded any class certification…." *Id.* at 354-355.  The Seventh Circuit vacated the certification order and remanded the case to proceed on the claims of the individual named plaintiffs only. *Id.*

On the basis of the *Peritz* ruling alone, the Rule 23 class should be decertified.  However, the procedural strategy Class Counsel pursued in this matter and the fact that it precludes application of the partial summary judgment ruling to the Rule 23 class also demonstrates the inadequacy of Class Counsel.  Not only did Class Counsel seek summary judgment at the same time as they sought class certification, they also have taken no action whatsoever to make sure notice of the certified class was sent. *See* Point I.B *infra*.  Without this notice, any summary judgment obtained by Plaintiffs only applies to the named plaintiff and the plaintiffs who consented to participate in the FLSA portion of this case, and only then on their FLSA claims. [4]

### B.    Failure to Seek Court-Approved Notice of FRCP 23(b)(3) Class Action

Even if Class Counsel had sought class certification and a ruling on the merits in proper sequence, there is another glaring omission on Class Counsel's part that has a dispositive effect in this case.  Class Counsel never sought to have the Court approve a notice to be sent to the Rule 23(b)(3) class in this case.  In a class certified under Rule 23(b)(3), notice and an

---

[4]   The FLSA opt-in plaintiffs are also affected by this failure of Class Counsel.  The Opt-In Plaintiffs only have a 2 or 3 year time period to recover under the FLSA.  29 U.S.C. § 255. Thus, Class Counsel's strategy deprived them of the benefit of New York Labor Law's six-year statute of limitations, as well as the ability to recover "pure gap time" wages under the New York Labor Law, which are not recoverable under the FLSA. *See United States v. Klinghoffer Bros. Realty Corp.,* 285 F.2d 487, 493 (2nd Cir. 1961)*; Monahan v. County of Chesterfield*, 95 F.3d 1263, 1280 (4th Cir. 1996) ("We also find that there is no cause of action under the FLSA for pure gap time…."); *Carter v. City of Charleston*, 995 F. Supp. 620, 621 (D.S.C. Dec. 16, 1997) ("Pure gap time claims are not cognizable under the FLSA when the hours worked do not exceed the overtime threshold and the employee has been paid for those hours at the statutory minimum wage. ") (internal citations omitted).

13

opportunity to opt out must be sent to absent class members.  Fed.R.Civ.P. 23(c)(2); *see also*

*Jones v. Diamond*, 594 F.2d 997, 1022-1023 (5th Cir. 1979) ("For such a class, the plaintiffs

would have been responsible for complying with Rule 23(c)(2) an insuring that the court directed

[notice to the class]….  The notice is mandatory….  Without valid notice and an opportunity to

opt out of the class, there can be no Res judicata effect given to judicial determinations of the

claims of unrepresented parties."), *portions overruled on other grounds, Int'l Woodworkers of*

*America v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986) (taxing of expert witness costs).

 The lack of notice to absent class members deprives the Court of jurisdiction over those

individuals.  For example, in *Gert v. Elgin National Industries, Inc.*, 773 F.2d 154 (7th Cir. 1985),

the appellate court affirmed summary judgment for the defendant, and also noted that the case

had been properly certified as a Rule 23(b)(3) class action.  *Id.* at 159.  However, the Seventh

Circuit then pointed out that notice had never been given to the putative class, which deprived

the court of jurisdiction.  *Id.* at 159-160 ("A personal judgment rendered without jurisdiction

over the person violates due process and is void.  Notice to (b)(3) class members is an

unambiguous requirement for jurisdiction.  The district court's order purports to rule against the

entire class.  Insofar as it does, we set it aside as void.  The order of the district court granting

summary judgment to the defendants is affirmed as to Mrs. Gert."); *see also Beale*, 1995 U.S.

Dist. LEXIS 15789, at *10 ("Absent proper notice under Rule 23(c)(2), no Rule 23(b)(3) class

member can be bound to any judgment against the class representatives because the Court simply

lacks jurisdiction over the unnotified class members.") (citations omitted).

 While many cases discuss the mandatory nature of notice for a Rule 23(b)(3) class, two in

particular talk about the lack of notice constituting inadequacy of class counsel, and both cases

resulted in decertification of an existing class.  In *Dubin v. Miller*, 132 F.R.D. 269 (D.Colo.

1990), the court certified a Rule 23(b)(3) class, but the plaintiffs' counsel did not seek class

notice.  Twenty-two (22) months later, after trial had already commenced and after the defendant

had move to decertify the class, plaintiff move for court approval of a notice.  After first faulting

class counsel's failure to pursue other potential defendants, the court stated that "[m]ore serious

is plaintiff's delay in providing notice to the class members and in pursuing the class issues

throughout the litigation." *Id*. at 273.  The court also rejected the plaintiff's belated attempt to

send notice and his excuses for not having done so promptly:

> Plaintiff and counsel have not complied with the requirement to pursue
> their action with dispatch and to request notice to the class as promptly as
> circumstances permitted…. Plaintiff seeks to explain the extraordinary delay in
> moving for notice to the class by portraying it as part of a considered, deliberate
> strategy to avoid needless expense in the circumstances presented here…. I am
> not persuaded by plaintiff's explanation, in light of the sequence of events here.
> Plaintiff could have moved for notice at any time…. Instead, he waited until
> defendants had filed motions for decertification based partly on his failure to give
> notice…. [T]he timing of the motion for notice can only be viewed as part of an
> ill-conceived, scrambling and belated attempt to blunt one of the better arguments
> made in the motions to decertify the class.  It fully supports the finding that
> plaintiff and his counsel are not adequate class representatives. *Id*.

Very recently, the court in *Sheinberg v. Robert Sorenson*, 2008 U.S. Dist. LEXIS 27784

(D.N.J. April 4, 2008), reached a similar conclusion.  There, although a class was certified, no

notice was sent, which resulted in decertification of the class.  Thereafter, plaintiffs retained new

counsel and moved to recertify the class, but this motion was denied because the court found that

the inadequacy of the prior class counsel were "serious flaws that strike at the core of the Court's

role in a class action to ensure the protection of the class." *Id*. at *10-11.  The *Sheinberg* court

noted that the "egregious example of the mismanagement which has pervaded this action

involves counsel's failure to provide notice of this litigation to the members of the putative

class." *Id*. at *12.

Here, Class Counsel has had over thirty-one (31) months since the Court's class certification decision to seek a court-approved notice.  Moreover, this omission cannot be said to be a mere oversight or mistake, as it was pointed out to Class Counsel over eighteen (18) months ago and thereafter (Weissflach Decl., ¶¶ 46-47, 54-55, 58, 60 & Exhs. E, G-I).  Yet, Class Counsel did nothing.  As noted above, this notice is mandatory in a Rule 23(b)(3) class action and the lack thereof deprives the Court of jurisdiction over the absent class members. Accordingly the class should be decertified on this basis, and also because the failure to send notice demonstrates that Class Counsel is not adequately and vigorously representing the class.

### C.    *Failure to Pursue Putative Joint Employers*

As noted above, the complaint was amended to name 10 temporary agencies and electrical subcontractors as co-defendants, on the theory that they were "joint employers" with the Radec Defendants and therefore "jointly liable" for any unpaid wages.  *See* Amended Complaint, ¶ 25.  However, these co-defendants were never served, and one has even been dismissed by stipulation.  *See* Weissflach Decl., ¶ 7.

As noted above, the failure to join all responsible parties as defendants has been viewed as evidence of the inadequacy of counsel leading to decertification.  *Dubin*, 132 F.R.D. at 273. The omission is even more egregious here when Class Counsel has long been aware of Radec's dire financial condition and the significant likelihood that any judgment they might obtain will not be satisfied by Radec.  By failing to pursue the same claims against other entities they claim to be "jointly liable," Class Counsel is not adequately representing the class.

### D.    *Failure to File Consent for Named Plaintiff, Patrick Mendez*

Another example of the inadequacy of counsel can be the failure to file consents to proceed in the FLSA portion of a case.  *See Sheinberg*, 2008 U.S. Dist. LEXIS at *19 n.1 (listing

failure to file consents as an example of inadequacy).  For purposes of the FLSA claim in this

case, the statute of limitations on each individuals' claim (*including that of the named plaintiff*)

runs until his or her opt-in form is filed with the court, regardless of when the original complaint

was filed.  See 29 U.S.C. §§ 255, 256; *Levy v. Verizon Information Services, Inc.*, 2007 U.S.

Dist. LEXIS 43223, *7-8 (E.D.N.Y. June 11, 2007).  Class Counsel never filed a consent for

named Plaintiff Patrick Mendez.  Because Mr. Mendez's employment ended in December 2002

(Amended Complaint, ¶¶ 74-75) and the maximum FLSA statute of limitations is three years (29

U.S.C. § 255), Mendez's FLSA claims are time barred.

This is not only a basic FLSA requirement that should not be forgotten by Class Counsel,

but it also time bars the named Plaintiff's federal claim and jeopardizes the entire collective

action.[5]  By failing to pursue Mendez's claim in a timely manner, Class Counsel now has a

potential malpractice issue with the named Plaintiff, which creates a conflict of interest sufficient

to preclude any further representation of Mendez and/or other putative plaintiffs in this case.

### E.      Failure to Prosecute

In addition to the specific failures mentioned above, many with class-wide and

jurisdictional consequences, the sequence of events described in the Weissflach Declaration

show that Class Counsel has done little or nothing on this case since the Court's November 22,

2005 Decision and Order.  In an effort to move the case further towards resolution, the Radec

Defendants proposed putting some issues before the Court for resolution prior to a jury trial.  In

so doing, the Radec Defendants went through all of the discovery materials and proposed a list of

---

[5]  Indeed, Radec intends to file a separate motion seeking dismissal of the FLSA portion of this case.  Mendez's claim is not only time barred, but his lack of an FLSA claim means that he cannot be "similarly situated" to the other putative members of the collective.  Without the FLSA claim, federal jurisdiction disappears and the Court can dismiss the case in its entirety.

out-of-town projects and all putative class members who worked on those projects so that the "normal working hours" issue could be resolved.  Class Counsel's response has been minimal, non-specific and inadequate.  As a consequence, the parties are no closer to resolving this matter than they were two years ago.  Weissflach Decl, ¶¶ 44-62 & Exhs. E-I.

Several cases have found Class Counsel to be inadequate when they fail to prosecute the case on behalf of the class in a prompt and vigorous fashion.  *See, e.g., Culver v. City of Milwaukee*, 277 F.3d 908, 912-913 (7th Cir. 2002) (affirming decertification where class representative "pursued the suit in a most lackadaisical manner" and "the performance of the class lawyer is inseparable from that of the class representative"); *Key*, 782 F.2d at 7 (affirming decertification due to class counsel's "general lackluster performance during trial"); *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985) (affirming denial of class certification when "the inexcusably long delay in the prosecution of plaintiffs' case demonstrated Andrews' and his counsel's indifference to protecting the interests of parties whom he claimed to represent"); *Gray v. Frito-Lay, Inc.*, 1982 U.S. Dist. LEXIS 17710, at *20 (S.D. Miss. Aug. 12, 1982) (class counsel displayed "lack of cooperation, diligence and competency"); *Sicinski v. Reliance Funding Corp.*, 82 F.R.D. 730, 734 (S.D.N.Y. 1979) (denying class certification where "plaintiff's counsel have not proceeded expeditiously").

## II.     Individual Issues Predominate Over Class Issues

In its November 2005 Decision and Order, this Court determined that individualized determinations did not predominate over class-wide issues, principally because the Court viewed such issues as relating principally to damages.  232 F.R.D. at 93.  However, the Court's determination on the summary judgment motion and Radec's attempts to prepare stipulations of fact show that numerous individualized determinations need be made, and that such

individualized determinations will predominate.  Additionally, recent Second Circuit law holds class certification should be denied even if the predominate issues relate solely to damages.

A class may only be certified under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and … a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  *Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2nd Cir. 2002) (internal quotations omitted).  "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved though generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir. 2002); *see also Dunnigan v. Metropolitan Life Ins. Co.*, 214 F.R.D. 125, 138 (S.D.N.Y. 2003) ("Courts frequently have found that the requirement was not met where, notwithstanding the presence of common legal and factual issues that satisfy the commonality requirement, the resolution of individual claims for relief would require individualized inquiries.") (citations omitted).

The Court's summary judgment decision shows just how individualized further proceedings in this case will be.  *See* Weissflach Decl., ¶¶ 18-38.  The Court denied summary judgment on the meal period claims specifically because whether individual employees' meal period were interrupted, and if so how often and for how long, needed to be determined.  232 F.R.D. at 85 ("Specifically, I cannot decide as a matter of law how often Radec employees' meal periods have been interrupted by work-related matters, or the typical duration of such interruptions, and I therefore cannot determine whether or how often those periods have been spent predominantly for the benefit of Radec.").

Although it granted summary judgment to plaintiffs on the overnight travel claims, the Court did not find that any Radec worker had traveled during "normal working hours" on any overnight project, which is essential for any recovery (indeed, from Radec's perspective, for liability in the first instance).  The Court left those issues open for further development and made no finding as to what any particular employee's normal working hours were and/or whether any particular employee traveled to an overnight stay job during such normal working hours, if any:

> If Radec employees traveled to the site of an out-of-town project during those hours, on jobs where they were expected to stay overnight, then they were entitled to be paid for their travel time to and from those sites…. Employees who traveled to a site during their normal working hours, whether on a working day or not, are entitled to the appropriate compensation. At this point, however, there is insufficient evidence before the Court to permit a determination of the precise damages to which plaintiffs are entitled. It has not been demonstrated, for example, what each employee's normal working hours were on various projects, or the dates and times when they traveled to and from those jobs. *Id.* at 88.

Thus, the Court's essentially left numerous individualized determinations for future resolution, including whether normal working hours existed for particular employees on particular projects, if so what those normal working hours were, and whether employees traveled during those normal working hours.  Radec's attempts to stipulate to certain information about the projects at issue, including determining which employees/workers[6] might have stayed overnight at each project, shows that individualized issues predominate.  *See* Weissflach Decl., Exhs. E.  Moreover, even if those issues could be resolved, each employee's travel schedule will have to be analyzed to determine whether they traveled during normal working hours.

---

[6]  Individualized determinations will also have to be made for workers obtained through temporary agencies and subcontractors were Radec employees, which depends upon specific working arrangements for those workers.  *See, e.g., Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61 (2nd Cir. 2003) (listing factors to be reviewed in determining joint employer status).

Although the Court viewed these individual issues as related only to damages, they in fact relate to liability as well.  As noted above, the Court did not determine that any Radec employee/worker traveled during normal working hours to overnight projects, even though this conclusion would be necessary to find liability for unpaid travel time.[7]  Indeed, if the individualized evidence demonstrates that there were no "normal working hours" for Radec employees/workers on particular projects and/or that no such employees/workers traveled to overnight projects during normal working hours – *e.g.*, if they traveled before their first shift of and after their last shift of the week – then Radec would not be liable for any travel time.

Even if all of these individual issues relate solely to damages, decertification is still appropriate.  Recently, in *McLaughlin v. American Tobacco Co.*, 522 F.3d 215 (2nd Cir. 2008), the Second Circuit reversed the district court and ordered a class decertified because the predominance requirement of Rule 23 was not satisfied, even though the individual determinations that predominated related to damages.  In so doing, the Second Circuit noted that class certification "would not materially advance the litigation because it would not dispose of larger issues such as reliance, injury, and damages." *Id*. at 234 (citation omitted); *see also In re IPO,* 471 F.3d at 44-45 (vacating order granting class certification because predominance requirement not met); *Dungan v. The Academy at Ivy Ridge*, 2008 U.S. Dist. LEXIS 39272 (N.D.N.Y. May 14, 2008) (citing *McLaughlin*, class certification denied given the "overwhelming predominance of … individualized inquiries"); *Myers v. The Hertz Corp.*, 2007

---

[7]  The Court denied summary judgment on meal period claims precisely because determining whether and to what extent meal periods were interrupted related to liability itself.  232 F.R.D. at 84-85.  After stating that the record did not demonstrate normal working hours for any Radec employees and/or whether they traveled to overnight projects during those normal working hours (232 F.R.D. at 88), the Court should have similarly denied summary judgment.  In any event, individualized inquiries required for these claims predominate and decertification is warranted.

U.S. Dist. LEXIS 53572, at *13 & *19-20 (E.D.N.Y. July 24, 2007) (commonality and predominance tests not satisfied where individual inquiries go beyond just damages and to the central claim of the Plaintiffs).

Finally, the Court defined the class as including "class members whose claims focus on defendants' alleged failure to pay any compensation, or to pay compensation at the rate required by law, for compensable time, including 'regular' work time, travel time to 'overnight' job sites, and meal periods which were spent predominantly for Radec's benefit."  232 F.R.D. at 95. However, not all putative class members have each kind of claim in this case, and some may not have any of the claims that have been certified for class treatment.  Indeed, after extensive review of individual employment records, Radec has been trying to get Plaintiffs to stipulate as to which Plaintiffs might have overnight travel claims (Weissflach Decl., ¶¶ 46-47 & Exh. E), all to no avail.  The individualized inquiries necessary to determine class membership alone should also preclude class certification.  *See Catanzano v. Dowling,* 847 F. Supp. 1070, 1078-1079 (W.D.N.Y. 1994) (Larimer, J.) (class definition is too general when it would require the court to determine whether a person's rights had been violated to determine whether that person was a class member), *aff'd*, 60 F.3d 113 (2nd Cir. 1995); *Newton v. Southern Wood Piedmont Corp.*, 163 F.R.D. 625, 632 (S.D.Ga. 1995) (denying motion for class certification where the "type of questions which must be answered in order to determine the members of a such a class are of a highly individualized nature."), *aff'd*, 95 F.3d 59 (11th Cir. 1996).

Based on the foregoing, the Court's decision with respect to summary judgment shows that the resolution of this case will require individualized determinations, not only to determine class membership in the first instance, but also to determine which class members, if any, might

have claims for interrupted/missed meal periods, overnight travel, etc.  Given that these individual issues predominate, the class action should be decertified.

**III.     CPLR 901(b) Prohibits a Class Action Under the New York State Labor Law**

Under New York law, "[u]nless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained by a class action." *See* CPLR § 901(b).  New York Labor Law § 198(1-a) provides that plaintiffs "shall" recover an additional amount of liquidated damages if the court determines that the employer's failure to pay wages was "willful."  Since the New York Labor Law does not expressly authorize class actions, Plaintiff cannot pursue such an action for willful violations of the statute.  *See Carter v. Frito-Lay, Inc.*, 74 A.D.2d 550, 425 N.Y.S.2d 115, 116-17 (1st Dep't 1980) (denying class certification because the New York Labor Law "provides for liquidated damages and does not contain the necessary clause allowing these damages to be recovered in a class-action"), *aff'd*, 52 N.Y.2d 994 (1981); *Caruso v. Allnet Comm. Servs., Inc.*, 242 A.D.2d 484, 662 N.Y.S.2d 468, 470 (1st Dep't 1997) (affirming denial of class certification).

Some Federal courts in New York have allowed Rule 23 class certification of New York Labor Law claims only where Plaintiffs voluntarily waive their liquidated damages claim. *Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 373-374 (S.D.N.Y. 2007) (citing cases).  However, such waiver of liquidated damages penalties is not appropriate.  *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945) (liquidated damages under the FLSA cannot be waived); *Rogers v. City of Troy*, 148 F.3d 52, 59 n.6 (2nd Cir. 1998) (same); *Asher v. Abbott Labs.*, 737 N.Y.S.2d 4 (1st Dep't 2002) ("[p]rivate persons cannot bring a class action under the Donnelly Act because the treble damages remedy provided in General Business Law § 340(5) is

a 'penalty' within the meaning of CPLR § 901(b), the recovery of which in a class action is not specifically authorized and the imposition of which cannot be waived").

Here, Plaintiffs purport to waive any claim to liquidated damages under the New York Labor Law.  Amended Complaint, p. 12.  However, even in those cases where such a waiver is deemed appropriate, it is allowed only "as long as putative class members are given the opportunity to opt out of the class in order to pursue their own liquidated damages claims." *Iglesias-Mendoza*, 239 F.R.D. at 373-374; *see also Klein v. Ryan Beck Holdings, Inc.*, 2007 U.S. Dist. LEXIS 51465, at *14 (S.D.N.Y. July 13, 2007) ("As long as potential plaintiffs are apprised of their right to pursue individual actions and informed that their joining the class will forfeit their right to recover liquidated damages, no harm results from the waiver.").

As noted above, one of Class Counsel's failings in this case is the fact that they never sought court approval of a notice to send to the Rule 23 class.  This not only shows the inadequacy of counsel, given the mandatory nature of this notice, but it also renders their purported waiver of New York Labor Law liquidated damages a nullity, precluding any class action for those claims.  Accordingly, the Court should decertify the class on this ground.

## IV.     Decertifying the Class Will Not Harm the Class Members

As described above, Class Counsel's errors and omissions in this case have already prejudiced the rights of the class, including but not limited to:  (1) precluding the applicability of partial summary judgment to the class; (2) depriving the Court of jurisdiction over absent class members; (3) inappropriately and ineffectively waiving liquidated damages under New York law, thus precluding class treatment of the New York Labor Law claims; and (4) failing to preserve the timeliness of named plaintiff's FLSA claim, putting the FLSA collective action and the basis for federal jurisdiction in this case in jeopardy.  Needless to say, Class Counsel's

apparent unwillingness to put any time and effort into the prosecution of this case for the last two years has also prejudiced the Radec Defendants, who seek a timely resolution of these claims.

Class Counsel may very well argue in response that decertification will hurt the class even more, but this would be untrue. The filing of the New York Labor Law claims in this case tolled the statute of limitations for all members of the class. *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554 (1974). If the class is decertified, the statute of limitations would re-commence, but the class members could be notified of the decertification itself and that the statute of limitations has begun to run again on their individual claims. *See Birmingham Steel Corp. v. Tennessee Valley Auth.*, 353 F.3d 1331, 1339 (11th Cir. 2003) (if a court decertifies a class, "the court must see that timely notification of decertification is sent to the class"); *Culver v. City of Milwaukee*, 277 F.3d 908, 913-915 (7th Cir. 2002) (court should order notice of decertification so absent class members can file their own suits if they so choose).

CONCLUSION

Defendants The Radec Corporation, Mark Shortino and Raymond Shortino respectfully request that the Court grant Defendants' Motion to Decertify the Rule 23 Class Action and grant such other relief as the Court deems just, proper, and equitable.

DATED:       Buffalo, New York
             July 7, 2008

                              /s/  Robert C. Weissflach, Esq.
                              Harter Secrest & Emery LLP
                              *Attorneys for Defendants*
                              *The Radec Corporation, Raymond & Mark Shortino*
                              Twelve Fountain Plaza, Suite 400
                              Buffalo, New York 14202
                              Telephone:  (716) 844-3707
                              Email:  rweissflach@hselaw.com