UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PATRICK MENDEZ,
on behalf of himself and all other employees
similarly situated, et al.,

                                        Plaintiffs,

                                                            DECISION AND ORDER

                                                            03-CV-6342L

                        v.

THE RADEC CORPORATION, et al.,

                                        Defendants.
_____

        Plaintiff, Patrick Mendez, commenced this action against his former employer, Radec

Corporation ("Radec"), and two of its officers, alleging that Radec has violated the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("Labor Law"), by

failing to pay wages to which Mendez was legally entitled.   Mendez also alleges that Radec

terminated his employment in retaliation for his complaints about Radec's wage violations.

        The Court has issued several decisions and orders in this case, familiarity with all of which

is assumed, that are relevant to an understanding of the issues now before me.   On February 26,

2004, in open court, I directed that potential class members be given notice of the existence of this

action and of their rights to opt in to the action under the FLSA's "collective action" provision, 29

U.S.C. § 216(b).   Dkt. #45.

On November 22, 2005, the Court issued a Decision and Order, which: granted in part and denied in part plaintiff's motion for summary judgment; granted plaintiff's motion for class certification of his Labor Law claims under Rule 23(b)(3) of the Federal Rules of Civil Procedure; and denied defendants' motion to "decertify" plaintiff's collective action under the FLSA. 232 F.R.D. 78.

Following the issuance of that Decision and Order, defendants moved pursuant to Rules 54(b) and 59(e), and 28 U.S.C. § 1292(b), for an order reconsidering, altering, or amending the Court's November 2005 Decision and Order, or alternatively, certifying the matter for interlocutory appeal. On January 30, 2006, the Court issued a Decision and Order denying defendants' motion. 411 F.Supp.2d 347.

Defendants have now filed a motion (Dkt. #216) to decertify the Rule 23 class, pursuant to Rule 23(c)(1)(C), which provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Plaintiffs oppose the motion.

## DISCUSSION

### I. General Principles

"Even after a [class] certification order is entered, the [district] judge remains free to modify it in the light of subsequent developments in the litigation." *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982). Thus, a district court that has certified a class under Rule 23 "can always alter, or indeed revoke, class certification at any time before final judgment is entered should

a change in circumstances" render a class action no longer appropriate. *Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 n. 9 (2d Cir. 2007); *see also Daffin v. Ford Motor Co.*, 458 F.3d 549, 554 (6th Cir. 2006) ("If at a subsequent point in the litigation the district court determines that [circumstances have materially changed], the district court may consider at that point whether to modify or decertify the class"); *In re Integra Realty Resources, Inc.*, 354 F.3d 1246, 1261 (10th Cir. 2004) ("a trial court overseeing a class action retains the ability to monitor the appropriateness of class certification throughout the proceedings and to modify or decertify a class at any time before final judgment"); *accord Lee v. City of Columbus, Ohio*, No. 2:07-CV-1230, 2008 WL 3981459, at *3 (S.D.Ohio Aug. 22, 2008), *modified on other grounds*, 2008 WL 5146504 (S.D.Ohio Dec. 5, 2008).

"In fact, a federal district court judge has an affirmative obligation to ensure" that class certification remains appropriate throughout the litigation. *Wu v. MAMSI Life & Health Ins. Co.*, 256 F.R.D. 158, 162-63 (D.Md. 2008). *See Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999) ("under Rule 23(c)(1), courts are required to reassess their class rulings as the case develops"); *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983) ("Under Rule 23 ... the district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts"); *Chisolm v. TranSouth Financial Corp.*, 194 F.R.D. 538, 544 (E.D.Va. 2000) ("the Court is duty bound to monitor its class decision and, where certification proves improvident, to decertify, subclassify, alter, or otherwise amend its class certification").

Like the initial decision whether to certify a class, the question of whether to decertify a class lies is committed to the discretion of the district court. *See Wu*, 256 F.R.D. at 162 ("A federal

district court possesses the same broad discretion in determining whether to modify or even decertify a class" as it does in deciding whether to grant class certification).   "In considering the appropriateness of decertification, the standard of review is the same as a motion for class certification:  whether the Rule 23 requirements are met." *Marlo v. United Parcel Service, Inc.*, 251 F.R.D. 476, 479 (C.D.Cal. 2008); *see also East Maine Baptist Church v. Union Planters Bank, N.A.*, 244 F.R.D. 538, 541 (E.D.Mo. 2007) ("In considering a defendant's motion for decertification, the Court follows the legal standard required for class certification ... and focuses its inquiry as to whether or not the requirements of Rule 23 have been met").

"[T]he four prerequisites of Rule 23(a) [are]:  numerosity, commonality, typicality, and adequacy of representation." *Marisol A. v. Giuliani*, 126 F.3d 372, 375 (2d Cir. 1997).  In addition, "the party seeking certification must qualify under one of three criteria set forth in Rule 23(b)." *Id.* at 376; *Comer v. Cisneros*, 37 F.3d 775, 796 (2d Cir. 1994).

In the case at bar, the Court found in its November 22, 2005 Decision and Order that plaintiffs had met the certification requirements of Rule 23(b)(3), which provides for certification when (1) questions of law or fact common to the class members predominate over any questions affecting only individual members, and (2) a class action would be superior to other available methods for the fair and efficient adjudication of the controversy.  *See* 232 F.R.D. at 93-94.

In support of their motion to decertify, defendants focus on two of the requirements of Rule 23:  adequacy of class counsel, and the predominance of classwide over individual issues. Defendants contend that the record now shows that neither condition has been satisfied.

## II. Alleged Inadequacy of Class Counsel

Defendants contend that class counsel have proved themselves to be inadequate in a number of respects. In particular, defendants assert that class counsel have made several glaring errors that have disadvantaged and prejudiced class members.

As other courts have observed, objections by defendants to the adequacy of class counsel sometimes need to be taken "with a grain of salt." *Williams v. Balcor Pension Investors*, 150 F.R.D. 109, 119 n. 10 (N.D.Ill. 1993); *accord Sipper v. Capital One Bank*, No. CV 01-9547, 2002 WL 398769, at *4 n.7 (C.D.Cal. Feb. 28, 2002); *Ballan v. Upjohn Co.*, 159 F.R.D. 473, 487 (W.D.Mich. 1994). If defendants carp about the alleged shortcomings of plaintiffs' counsel, then, it is probably not out of any particular solicitude for the class members themselves. At any rate, the underlying reasons for defendants' complaints about class counsel's performance have no bearing upon the Court's independent, continuing obligation to determine if Rule 23's adequate-representation requirement has been met. *See In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1112 (10th Cir. 2001) ("Once the decision to certify a class has been made, the court remains under a continuing duty to monitor the adequacy of representation to ensure that class counsel provides zealous, competent representation through the proceedings"); *accord Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1219 (9th Cir. 2000); *Foe v. Cuomo*, 892 F.2d 196, 198 (2d Cir. 1989). With these considerations in mind, the Court turns to the particular bases for defendants' assertion that class counsel in this case have proven themselves inadequate.

**A. Simultaneous Class Certification and Summary Judgment Motions**

Plaintiff Mendez moved for summary judgment (Dkt. #131) at the same time that he moved for class certification (Dkt. #134).  In its November 22, 2005 Decision and Order (Dkt. #195), the Court granted the motion to certify, and granted in part and denied in part the motion for summary judgment.

Specifically, the Court granted summary judgment for plaintiff on the issue of defendants' liability as to claims arising out of travel to job sites where an overnight stay was expected, and for overtime pay for compensable travel time when an employee's total hours exceeded forty hours in a given week.  The Court also certified a Rule 23 class with respect to claims under the New York Labor Law asserted by the members of Subclass 2 of the amended complaint.[1]

Defendants contend that the summary judgment ruling in favor of Mendez cannot be applied to the class as a whole, because of the rule against "one-way intervention," which "bars potential class members from waiting on the sidelines to see how the lawsuit turns out and, if a judgment for the class is entered, intervening to take advantage of the judgment," while only the named plaintiff would be bound by a judgment in favor of the defendant. *Amati v. City of Woodstock*, 176 F.3d 952, 957 (7th Cir.), *cert. denied*, 528 U.S. 985 (1999).  To foreclose that possibility, Congress in 1966 amended Rule 23 in a number of respects, including the addition of "opt out" procedures, with the aim of ensuring that "a person's decision whether to be bound by the judgment[ in a class action]–like the court's decision whether to certify the class–would come well in advance of the

---

[1]Subclass 2 consists of class members whose claims focus on defendants' alleged failure to pay any compensation, or to pay compensation at the rate required by law, for compensable time, including "regular" work time, travel time to "overnight" job sites, and meal periods which were spent predominantly for Radec's benefit.

decision on the merits." *Premier Elec. Const. Co. v. National Elec. Contractors Ass'n, Inc.*, 814 F.2d 358, 362 (7th Cir. 1987). *See also Becherer v. Merrill Lynch, Pierce, Fenner, and Smith, Inc.*, 193 F.3d 415, 429 (6th Cir. 1999) (Congress's 1966 revisions to Rule 23 were designed to end one-way intervention) (Moore, C.J., concurring); Advisory Committee Notes to 1966 Amendments to Rule 23 ("Under ... subdivision (c)(3), one-way intervention is excluded; the action will have been early determined to be a class or nonclass action, and in the former case the judgment, whether or not favorable, will include the class"). Defendants contend that by seeking a judgment on the merits simultaneously with class certification, and prior to notice being sent to class members, class counsel effectively prevented the Court's summary judgment ruling from inuring to the benefit of the class as a whole.

In response, plaintiffs contend that defendants' delay in raising this issue is itself grounds for denying defendants' motion. Plaintiffs also contend that there was nothing improper or erroneous about counsel's simultaneously filing, or the Court deciding, their motions for summary judgment and for class certification.

Strictly speaking, whether the summary judgment ruling in favor of Mendez can be applied to other class members is not directly before me. Defendants are not now objecting to the Court's simultaneously ruling on that motion and the class certification motion (and indeed it would seem to be far too late to raise such an objection now), but instead are arguing, based on their position concerning the effect of such simultaneous rulings, that plaintiff's counsel have proven themselves inadequate to represent the interests of the class, and that the class should therefore be decertified.

Whether that argument is well-taken, then, depends to a considerable extent on whether the simultaneity of the summary judgment and class certification motions was in fact improper.

Courts have held that in general, issues relating to class certification should be decided before a decision on the merits is rendered. *See*, *e.g.*, *Bertrand v. Maram*, 495 F.3d 452, 455 (7th Cir. 2007) ("Class-action status must be granted (or denied) early ... to clarify who will be bound by the decision"); *Schwarzschild v. Tse*, 69 F.3d 293, 296 (9th Cir. 1995) (Rule 23 "clearly contemplates that the notice requirement will be met *before* the parties are aware of the district court's judgment on the merits"); *see also Philip Morris Inc. v. National Asbestos Workers Medical Fund*, 214 F.3d 132, 135 (2d Cir. 2000) (stating that "it is 'difficult to imagine cases in which it is appropriate to defer class certification until after decision on the merits'") (quoting *Bieneman v. Chicago*, 838 F.2d 962, 964 (7th Cir. 1988) (per curiam)).

There are exceptions to that general principle, however. For example, there is authority that a defendant can waive any objection to a decision on the merits prior to, or simultaneous with, a decision on class certification. *See*, *e.g.*, *Ahne v. Allis-Chalmers Corp.*, 102 F.R.D. 147, 151 (E.D.Wisc. 1984) ("the courts have carved out a limited exception for those defendants willing to forego the protections attendant on early determination of the class issue"). Such a waiver may be express, *see*, *e.g.*, *Rivell v. Private Healthcare Systems, Inc.*, No. CV 106-176, 2007 WL 1221315, at *3 (S.D.Ga. Apr. 20, 2007) ("In this case, Defendants expressly waive any invocation on such protection" of the rule against one-way intervention), *vacated on other grounds and remanded*, 520 F.3d 1308 (11th Cir. 2008), or implied, such as where the *defendant* moves for summary judgment prior to class certification. *See*, *e.g.*, *Wright v. Schock*, 742 F.2d 541 (9th Cir. 1984) (district court

did not abuse its discretion in ruling on defendants' motion for summary judgment prior to ruling on plaintiffs' motion for class certification where defendants implicitly consented to district court's manner of proceeding); *Postow v. OBA Federal Savings & Loan Ass'n*, 627 F.2d 1370 (D.C. Cir. 1980) (agreeing with courts that have held that "a defendant may waive the protections Rule 23(c) offers and elect to have the merits decided before the class certification question and before notice is sent to the class when ... the defendant moves for summary judgment before resolution of the certification issue"); *see also Schweizer v. Trans Union Corp.*, 136 F.3d 233, 239 (2d Cir. 1998) (district court acted within its discretion in awarding summary judgment for defendant before acting on class certification); *Hyman v. First Union Corp.*, 982 F.Supp. 8, 11 (D.D.C. 1997) (holding that "defendants have implicitly waived this right [to have certification issues decided first, where] both parties cooperated with this court, without raising any objections or concerns, so that the summary judgment papers would be ripe at the same time the court would be considering the class certification issues").

On the facts before me, I conclude that defendants have waived any objections to the procedure that was followed here, and therefore to any argument that the class should be decertified on that basis. Just as the rule against one-way intervention "bars potential class members from waiting on the sidelines to see how the lawsuit turns out and, if a judgment for the class is entered, intervening to take advantage of the judgment," *Amati*, 176 F.3d at 957, so too defendants should not be permitted to wait and see how the Court will rule on plaintiff's summary judgment and Rule 23 class certification motions (as well as on defendant's motion to decertify the FLSA collective action, which was decided at the same time), and then, after the Court rules against defendants,

belatedly seek to decertify the class on the ground that the Court should never have followed that procedure in the first place. *See Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 299 n.7 (1st Cir. 2000) (describing as "unorthodox" the district court's entry of partial summary judgment for named plaintiff prior to granting class certification, but stating that because defendant did not directly challenge that timing, Court of Appeals would "not pass upon the appropriateness of delaying a class certification ruling until after acting upon an individual plaintiff's summary judgment motion"); *see also Buchanan v. Consolidated Stores Corp.*, 217 F.R.D. 178, 185 (D.Md. 2003) (denying defendants' motion to strike class allegations, which was based on plaintiffs' delay in moving for class certification, where, "[a]t no point during the course of the litigation did Defendants raise any concerns about the timing of the class certification motion"); *Williams v. Lane*, 129 F.R.D. 636, 648 (N.D.Ill. 1990) (concluding that defendants had waived protections of rule against one-way intervention where, "[i]nstead of insisting on prejudgment notice, defendants sat on their hands hoping to obtain a favorable judgment on the merits," and not until court had ruled in favor of plaintiffs did defendants invoke the one-way intervention rule; adding that "[t]here is not the slightest doubt that defendants would have made no such protestations had the liability judgment come out differently").[2]

---

[2]At oral argument on defendants' motion to decertify, defense counsel, responding to the Court's query whether defendants' failure to raise this issue prior to the issuance of the Court's certification order presented a problem for defendants with respect to their motion to decertify, replied, "I don't think it [does] because obviously it's to our benefit that [plaintiffs] chose to proceed in this fashion ... ." Dkt. #229 at 19.  In a similar vein, he added, "plus, quite frankly, Your Honor, we didn't think we were going to lose [on plaintiff's motion for] summary judgment ..., which is why we didn't even move ... ." Dkt. #229 at 20.

In other words, defendants made a conscious tactical decision *not* to raise this issue when
(continued...)

Again, I recognize that defendants are not literally objecting to the procedure itself, but rather are arguing that the procedure that was followed was detrimental to the class, and that it resulted from a blunder on the part of class counsel. That argument, however, amounts to little more than a "back door" attempt to challenge class certification on a ground that defendants could have raised, but failed to assert, when plaintiff's class certification motion was pending before me.[3]

In addition, even aside from any issues concerning waiver, I am not persuaded by defendants' argument that the Court's rulings on plaintiff's motion for partial summary judgment cannot be applied to other class members. The cases relied upon by defendants mostly involve pre-certification

---

[2](...continued)
plaintiff's summary judgment and certification motions were pending. Their thinking, apparently, was that if the Court were to deny plaintiff's motion, the issue would become moot. If the Court granted both the summary judgment and class certification motions, however, defendants would then spring the trap that–as they saw it–class counsel had unwittingly laid for themselves. While the Court appreciates defense counsel's candor, that sort of gamesmanship is what the waiver doctrine is designed to prevent.

[3]At one point in their brief, defendants do suggest that decertification is warranted not simply because of class counsel's inadequacy, but because of the fact of the simultaneous rulings on the summary judgment and class certification motions: defendants state that "the Rule 23 class should be decertified" based on *Peritz v. Liberty Loan Corp.*, 523 F.2d 349 (7th Cir. 1975), in which the Seventh Circuit remanded with orders to vacate an order of certification, and to proceed with the individual claims of the named plaintiffs, where the plaintiffs had "sought resolution on the merits prior to certification *in the face of objections by the defendants*." *Id.* at 354 (emphasis added). By so doing, the Court of Appeals held, the plaintiffs "ha[d] themselves effectively precluded any class certification in this case." *Id.*

In the case at bar, however, defendants did *not* object to plaintiff's simultaneously moving for summary judgment and for class certification. It is perhaps in implicit recognition of that difference between this case and *Peritz* that defendants' motion is primarily based not directly on any alleged improprieties in the simultaneity of plaintiff's motions or this Court's decisions on those motions, but instead on the alleged errors of class counsel.

motions for summary judgment filed by class action *defendants*, which implicate far different concerns from those present here.

There is authority that when a district court decides a motion for summary judgment before a class has been certified, that decision will not bind putative class members. *See, e.g., Chevron USA Inc. v. School Bd. Vermilion Parish*, 294 F.3d 716, 720 (5th Cir. 2002) (holding that district court's order granting partial summary judgment for defendant did not bind members of putative class because no class action had been certified); *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1013 n.1 (9th Cir. 2000) (summary judgment against an uncertified class bound only the named class members, with no res judicata effect on the claims of unnamed members of the purported class); *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 n.2 (6th Cir. 1998) (plaintiff was not a party to putative class action and therefore was not directly bound by adverse judgment entered in that action); *Helms v. Consumerinfo.com, Inc.*, 436 F.Supp.2d 1220, 1227 n.7 (N.D.Ala. 2005) ("Because this court has yet to rule on class certification in this case, a summary judgment ruling against Plaintiff will not bind the as yet unnamed class members").

Virtually all of the reported cases applying that rule, however, involve dispositive motions filed by the defendants. That may be in part because plaintiffs typically do not file dispositive motions until after a class has been certified, but regardless of the reason, that difference renders those cases materially distinguishable from this one.

As stated, pre-certification dispositive motions filed by plaintiffs and defendants implicate different concerns. If an individual plaintiff brings an action, ostensibly on behalf of a class of persons, and the defendant successfully moves against that plaintiff before a class has been certified,

clearly it would be inequitable to allow the defendant to use that judgment to prevent other similarly situated persons (who may not even have been aware of the prior litigation) from seeking relief in their own behalf.  To avoid such a result, "due process requires at a minimum" that putative class members be given notice of the class action and an opportunity to exclude themselves from the class prior to any judgment being rendered which might affect their rights.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).  *Accord In re Veneman*, 309 F.3d 789, 792 (D.C.Cir. 2002); *see also In re Monumental Life Ins. Co.*, 365 F.3d 408, 416 (5th Cir.) ("As 'fundamental requisites of the constitutional guarantees of procedural due process,' notice and opt-out are mandatory for damage classes certified under rule 23(b)(3)") (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974)), *cert. denied*, 543 U.S. 870 (2004); *Lemon v. International Union of Operating Engineers, Local No. 139, AFL-CIO*, 216 F.3d 577, 580 (7th Cir. 2000) ("each class member in actions for money damages is entitled as a matter of due process to personal notice and an opportunity to opt out of the class action").

In accordance with those principles, a judgment entered in a Rule 23(b)(3) class action will not bind putative class members who have opted out of the class, or who did not receive adequate notice of the existence or nature of the action.  *See Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 530 (D.C. Cir. 2006) (individual class members in suit for damages "must have a chance to opt out of the class and go it alone–or not at all–without being bound by the class judgment"); *Abbott Laboratories v. CVS Pharmacy, Inc.*, 290 F.3d 854, 859 (7th Cir. 2002) (under Rule 23, any potential class member who opts out is not bound by a judgment in the class action); *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (plaintiff's claims were not barred by prior settlement

in class action, since even if he saw published notices of that action, the language of the notices was insufficient to notify plaintiff that claims like his were being litigated in the action).[4]

For much the same reasons, an individual's claims will not be barred by a judgment in favor of the defendant in an action brought under Rule 23, if no class was ever certified (and hence no notices ever sent) prior to the entry of the judgment. *See Wright*, 742 F.2d at 544 (where defendants successfully moved for summary judgment against named plaintiffs prior to decision on class certification, other "individuals or class members remain[ed] free to assert any claims they m[ight] have" against the defendants, who "assume[d] the risk that summary judgment in [their] favor w[ould] have only stare decisis effect on the members of the putative class"); *In re Farmers Ins. Co., Inc. FCRA Litigation*, No. CIV-03-158, 2006 WL 1042499, at *2 (W.D.Okla. Apr. 13, 2006) ("unless absent members are given an opportunity to opt out of the class, any summary judgment in favor of defendant would only be binding on the named plaintiffs").

The same considerations are not implicated, however, when the named *plaintiff* moves for summary judgment prior to a class having been certified. This case well illustrates the reason for the difference.

---

[4]As a number of courts have explained, the due process requirements concerning notice and opt-out rights apply mainly in the context of claims for monetary relief, since "members of a class seeking substantial monetary damages may have divergent interests ... ." *See, e.g.*, *Veneman*, 309 F.3d at 792. Notice and opt-out rights are not necessarily required in actions seeking primarily injunctive relief, "because a class seeking primarily equitable relief for a common injury is assumed to be a cohesive group with few conflicting interests, giving rise to a presumption that adequate representation alone provides sufficient procedural protection." *Id.* (citing *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 165 (2d Cir. 2001), *cert. denied*, 535 U.S. 951 (2002)).

Arguably, there could be some unfair prejudice to the defendant if a class is certified, and notices sent to putative class members, after a judgment on the merits has been entered in favor of the class. At least in theory, some of the class members might have opted out, had they received notice of the action prior to the judgment on the merits, but would be less likely to do so if they know that the court has already ruled in favor of the class on some issues.

That, however, is why defendants have the right–should they choose to exercise it–to have class certification issues decided first, before any decision on the merits of the plaintiffs' claims. Defendants here never invoked that right, however. As stated, they thereby implicitly waived that right.

Moreover, unlike a putative class member to whom no notice has been sent, defendants were well aware that this action had been brought against them as a class action, and they must have known that any determinations against them might well inure to the benefit of the class as a whole. Their awareness of that possibility should have been heightened by the fact that plaintiffs had moved for class certification and for summary judgment at the same time. Unlike an absent class member, then, defendants were fully aware of the nature of the claims against them, and they had every incentive to litigate the issues presented by plaintiff's motions.

As a purely practical matter, it is also difficult to see what difference it would make if the Court were to conclude that my ruling in plaintiff's favor on his motion for partial summary judgment should not apply to the class as a whole. The gist of the Court's ruling was simply that Radec had engaged in certain practices that violated the law. Specifically, the Court found that "the record clearly shows that in many instances no compensation was paid [by Radec] for [compensable]

- 15 -

travel time," and that "on at least some occasions, defendants paid Radec employees for travel time at straight-time rates, even though the employee had worked over 40 hours that week" and hence should have been paid at overtime rates.  232 F.R.D. at 95.  Those findings, which are in the nature of a declaratory judgment, are part of the law of the case, and any class member who establishes that he was subjected to those policies will be entitled to damages.[5]

For all these reasons, then, I conclude that defendants have waived any objection to class counsel's simultaneous filing of, and the Court's decisions on, plaintiff's motions for partial summary judgment and for class certification.  I also conclude that the Court's prior rulings on

---

[5]In addition, even if the class were decertified, putative class members might still be able to make use of the Court's rulings in this case through offensive collateral estoppel, which "permits a plaintiff to bar a defendant from relitigating an issue that was decided in a prior case against the defendant."  *Roe v. City of Waterbury*, 542 F.3d 31, 41 (2d Cir. 2008).  To do so, a plaintiff must show that:

> (1) the issues of both proceedings are identical; (2) the relevant issues were actually litigated and actually decided in the prior proceedings; (3) there was a full and fair opportunity for the litigation of the issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgement on the merits.

*Id.* (citing *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995)); *accord Faulkner v. National Geographic Enterprises Inc.*, 409 F.3d 26, 37 (2d Cir. 2005).  *See, e.g., Thomas v. SLT/TAG, Inc.,* No. Civ. 030-297, 2004 WL 1068782, at *2-*3 (D.Or. May 11, 2004) (applying offensive collateral estoppel to plaintiffs' claim of liability for overtime because other plaintiffs had prevailed on that same issue against the same defendants); *In re Transocean Tender Offer Securities Litigation*, 455 F.Supp. 999, 1008 (N.D.Ill. 1978) (plaintiffs who opted out of state court class action were entitled to summary judgment on the issue of liability on their state law claims in federal court action, based on factual findings of state court).  *But see Premier Elec. Constr.*, 814 F.2d at 362 (holding that putative class member who opts *out* of a class action generally will not be permitted to invoke offensive estoppel, but adding that doctrine of *stare decisis* would mean that court's rulings in class action would be entitled to some respect in later litigation involving same fact pattern); *see also Deposit Guaranty Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 354 (1980) (if court denies plaintiff's motion for class certification, and named plaintiff afterwards obtains injunctive or declaratory relief, "the absent members of the putative class would have obtained by force of *stare decisis* or the decree itself most of the benefits of actual class membership") (Brennan, J., concurring).

summary judgment should apply to the class as a whole.  Accordingly, the simultaneous filing of those two motions does not demonstrate any inadequacy on the part of class counsel.[6]

In addition, even if, in hindsight, class counsel would have been better advised to await the Court's decision on class certification before moving for summary judgment (if for no other reason than to avoid defendants' subsequent motion to decertify on this ground), this certainly did not amount to such an egregious blunder as to warrant decertification of the class.  *See Koss v. Wackenhut Corp.*, No. 03 Civ. 7679, 2009 WL 928087, at *9 (S.D.N.Y. Mar. 30, 2009) (alleged errors by class counsel in other cases were "not of the type that would call into question [his] adequacy as class counsel"); *In re Honeywell Intern. Inc. Securities Litigation*, 211 F.R.D. 255, 262-63 (D.N.J. 2002) (concluding, despite class counsel's errors in overstating client's losses of client by over $300,000, that "the errors d[id] not substantially call into question the firm's ability to represent the members of the proposed class," when viewed in context of firm's track record in such cases).  *Cf. Sheinberg v. Sorensen*, No. 00-6041, 2008 WL 928121, at *4-*8 (D.N.J. Apr. 4, 2008) (noting that class had been decertified where the record was "replete with examples of prior counsel's inadequacies," and denying plaintiffs' motion for recertification where new counsel had

---

[6]I also note that at least one court has held that employees may be allowed to opt in to an FLSA collective action even after the court has issued a decision on the employer's liability.  *See Raper v. State of Iowa*, 165 F.R.D. 89, 92 (S.D.Iowa 1996) (acknowledging defendants' concerns about one-way intervention, but stating that "[t]he remedial purposes of the FLSA and judicial economy favor granting the motion" to intervene, and adding that "as a practical matter an unfavorable outcome would have consequences with respect to any separate action by the non-joining class members ... .")

continued that "pattern of malfeasance," resulting in a "series of significant errors that have occurred throughout the history of this litigation").[7]

## B. Failure to Seek Court-Approved Notice of Rule 23(b)(3) Class Action

Defendants also contend that class counsel have demonstrated their inadequacy by failing to seek to obtain Court approval of a notice to be sent to the Rule 23(b)(3) class.  In a Rule 23(b)(3) action, notice must be sent to absent class members to give them the opportunity to opt out.  *See Eisen*, 417 U.S. at 174.  Lack of notice deprives the Court of jurisdiction over absent class members with respect to any rulings the Court issues.  *See Smith v. Shawnee Library System*, 60 F.3d 317, 321 (7th Cir. 1995) ("members of a Rule 23(b)(3) class must receive reasonable notice and an opportunity to opt out; that is an absolute requirement for a court to exercise jurisdiction over those class members") (citing *Eisen*, 417 U.S. at 173); *Gert v. Elgin Nat. Industries, Inc.*, 773 F.2d 154, 159 (7th Cir. 1985) (stating that "[n]otice to (b)(3) class members is an unambiguous requirement for jurisdiction" and that "[a] personal judgment entered without jurisdiction over the person violates due process and is void").

In response to this argument, plaintiffs state that "this Court has not yet ordered that notice be sent" and that "until such time as the Court orders notice to be sent to the class members,

---

[7]To some extent, defendants' motion rests upon circular reasoning.  They contend that class counsel's filing of simultaneous class certification and summary judgment motions has prejudiced the class; that this constituted a serious error that demonstrates counsel's inadequacy; and that the class should therefore be decertified.  The only possible prejudice that could occur here, however, would be decertification itself.  As explained above, given the context of this case, as long as the class remains certified, the Court's summary judgment rulings will, as the law of the case, inure to the benefit of the class members.

plaintiffs cannot be accused of unduly delaying notice." Plaintiff's Mem. (Dkt. #222) at 10. Plaintiffs aver that they "stand ready to send [notice] at any time deemed appropriate by the Court and upon receipt of an updated class list from defendants." *Id.* at 11.

Rule 23(c)(2)(B) states in part that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Although it is ultimately the court's duty to order that notice be sent, *see Culver v. City of Milwaukee*, 277 F.3d 908, 915 (7th Cir. 2002), it is clear that class counsel have some responsibility with regard to the sending of notice. *See, e.g.*, *In re Franklin Nat'l Bank Securities Litigation*, 574 F.2d 662, 670 (2d Cir. 1978) ("no amount of argument ... can relieve the plaintiff himself of the responsibility of notifying the members of the class"); *Greenfield v. Villager Industries, Inc.*, 483 F.2d 824, 832 (3d Cir. 1973) ("Responsibility for compliance [with Rule 23's notice provisions] is placed primarily on the active participants in the lawsuit, especially upon counsel for the class").

In accordance with that principle, courts have held that class counsel's failure to send notice to the class can be a factor weighing in favor of decertification. In general, however, such cases involve counsel's failure to carry out the court's order directing the issuance of notice, rather than counsel's failure to move for such an order. *See, e.g.*, *Sheinberg v. Sorensen*, No. 00-6041, 2008 WL 928121, at *1 (noting that "[d]espite the Court's order, Plaintiffs' prior counsel failed to issue notice to the class," which contributed to court's decision to decertify); *Wells v. McDonough*, 188 F.R.D. 277, 279-80 and n.3 (N.D.Ill. 1999) (describing counsel's failure to send class notice, despite court's order approving such notice, as "disturbing," but declining to decertify class, since decertification

would only lead to more delay, and court was confident that counsel would send notice following issuance of court's decision).

The court in *Dubin v. Miller*, 132 F.R.D. 269 (D.Colo. 1990), did decertify a class based in part on the inadequacy of class counsel, which in turn was based in part on the fact that it was not until twenty-one months after the class was certified that counsel moved for court approval to send notice to the class. *Id.* at 273.  That was in the context, however, of a number of other problems, including the named plaintiff's inadequacy as a class representative, and the atypicality of his claims vis-a-vis the other class members, as well as other examples of counsel's inadequacy, such as the fact that it took a court order threatening dismissal for failure to prosecute before counsel complied with a court order to file an amended complaint. *Id.*

In the case at bar, certainly class counsel could by now have taken steps to seek approval and direction from the Court relative to the form and sending of notice to the class.  Nevertheless, I do not believe that counsel's delay in that regard is serious enough to warrant decertification.  Counsel have otherwise been diligent in prosecuting this action, and the interests of the class would not be served in any way by decertification. *See Wells*, 188 F.R.D. at 280.

Furthermore, the issue of notice in many ways overlaps with the issues concerning simultaneous class certification and summary judgment motions discussed above.  A primary purpose of the notice requirement is to preserve absent class members' rights to pursue their own individual claims, and to protect them from being bound by a judgment in an action of which they have been given no, or inadequate, notice or opportunity to exclude themselves. *See Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 330 n.25 (4th Cir. 2006) ("Rule 23(b)(3) protects these

- 20 -

rights [of absent class members to recover money damages and class members who want individualized evaluation of their claim for money damages] by requiring notice and the opportunity to opt-out"); *Sarasota Oil Co. v. Greyhound Leasing & Financial Corp.*, 483 F.2d 450, 452 (10th Cir. 1973) ("One of the primary purposes of the notice requirement is to afford an opportunity for (b)(3) class members to avoid being bound by a class action judgment and to permit them to litigate their own claims").  *See, e.g., Smith*, 60 F.3d at 322 (insofar as magistrate judge's summary judgment order purported to rule against entire class, it was in error, since summary judgment had been entered before class was notified of suit); *Carlough v. Amchem Products, Inc.*, 10 F.3d 189, 200 (3d Cir. 1993) (district court's pre-notice, pre-opt out injunction was premature and not binding on absent plaintiffs); *Gert*, 773 F.2d at 159 (setting aside as void district court's order that purported to rule against entire class, and affirming order as to named plaintiff only, since order was entered before notice was given to class); *Penson v. Terminal Transport Co., Inc.*, 634 F.2d 989, 995 (5th Cir. 1981) ("This Court has consistently held that a class member's individual suit will not be barred by res judicata if notice of the prior judgment in the class action is inadequate").

Those concerns are not implicated here.  The Court has simply ruled that defendants engaged in certain unlawful practices with regard to the payment of overtime wages to Radec employees. That is now the law of the case, but it does not, and could not, "bind" absent class members in any way.  When they have been given notice, class members will have an opportunity to opt out of this action and, if they wish, to file their own individual claims.[8]

---

[8]The contents of the notice–and specifically what, if anything, it should state concerning the Court's prior rulings in this case–remain to be decided.  *Compare Postow*, 627 F.2d at 1383 (trial court did not abuse its discretion in allowing post-judgment certification of class where,

(continued...)

**C. Failure to Pursue "Joint Employers"**

In August 2004, plaintiffs amended the complaint to name ten additional defendants, all of whom were apparently temporary-employment agencies and subcontractors, on the theory that they were "joint employers" with Radec. *See* Dkt. #111 ¶ 25. None of those additional defendants has ever been served, however, and one has been dismissed by stipulation. *See* Dkt. #127, #193.

Defendants contend that class counsel's failure to pursue the claims against those additional defendants is further evidence of class counsel's inadequacy. They assert that this failure is particularly egregious because class counsel "has long been aware of Radec's dire financial condition" and possible inability to satisfy a judgment against it. Defendants' Mem. (Dkt. #218) at 16. In response, plaintiffs contend that "[t]he fact that these co-defendants have not been pursued relates to plaintiff's case strategy," Plaintiff's Mem. (Dkt. #222) at 11, although they have not stated what that strategy is.

The court in *Dubin* did state that class counsel's "failure to join all responsible parties as defendants further supports the finding that plaintiff and counsel do not adequately represent the

---

[8](...continued)

*inter alia*, "the notice to potential class members did not inform them as to the existence of any judgment in their favor, thus reducing substantially the 'one way street' danger of post-judgment certifications"), *with Katz v. Carte Blanche Corp.*, 496 F.2d 747, 760 (3d Cir. 1974) ("If Katz [the named plaintiff] establishes [defendant's] violation [of the Truth in Lending Act], ... the notice will advise [class members that there is a judgment establishing violation, and their decision [whether to opt out] will be more informed"), and *Macarz v. Transworld Systems, Inc.*, 201 F.R.D. 54, 58 (D.Conn. 2001) ("the fact that the Court has ruled on liability in plaintiff's favor is properly included in the notice" to the class, so that class members could make a better-informed decision about whether to opt out). *See also Williams*, 129 F.R.D. at 642 n.10 ("Of course this Court will entertain motions as to the nature and scope of any notice to be afforded members of the plaintiff class before any award of damages is made," where court had made liability determination against defendants prior to notice being sent).

class." 132 F.R.D. at 273. At the same time, however, courts have recognized that "generally, failure to join all defendants is a strategy choice, and except for a showing of unique circumstances, is probably not a ground for finding inadequacy." *Feder v. Electronic Data Systems Corp.*, 429 F.3d 125, 135 (5th Cir. 2005) (quoting *Paper Systems, Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 611 (E.D.Wisc. 2000)). In light of class counsel's experience in these types of cases and their generally diligent prosecution of this action, the Court will not second-guess their decision not to more vigorously pursue their claims against these defendants.

**D. Failure to File Consent for Patrick Mendez**

Next, defendants point out that class counsel have never filed a written consent by the lead plaintiff, Patrick Mendez, to participate in the FLSA collective action. Defendants contend that since Mendez's employment with Radec ended in December 2002, his FLSA claims are therefore time barred under 29 U.S.C. 255(a), which provides for a two-year limitations period, or three years if the violation was willful.

Under the FLSA, an aggrieved employee may sue "in behalf of himself ... and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Although it may seem curious that this consent requirement would apply to a named plaintiff, this requirement has been held to apply even to the named plaintiffs in a collective action under the FLSA. *See, e.g., Harkins v. Riverboat Services, Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004) ("The statute is unambiguous: if you haven't given your written

- 23 -

consent to join the suit, or if you have but it hasn't been filed with the court, you're not a party.  It makes no difference that you are named in the complaint"); *Tate v. Showboat Marina Casino*, No. 02 C 3432, 2002 WL 31443124, at *6 (N.D.Ill. Oct. 31, 2002) ("even for named plaintiffs signed consents are required to mark the commencement of the action").

In opposition to defendants' motion, plaintiffs cite authority that "the requirement that plaintiffs in a representative action file a written consent with the district court applies only to those parties who are not named as plaintiffs in the complaint." *Anderson v. Montgomery Ward & Co.*, 852 F.2d 1008, 1018-19 (7th Cir. 1988).  In *Harkins*, however, the Seventh Circuit described that statement as "the purest dictum," because "[t]he [consent] requirement is applicable only to collective actions," and "*Anderson* was a joint action–that is, a suit that is not a collective action because, although there are multiple plaintiffs, there is no claim for relief on behalf of persons similarly situated to the named plaintiffs."  385 F.3d at 1102.

Although the court in *Harkins* also emphasized "[t]he importance of a strict interpretation" of the consent requirement, *id.* at 1101, courts have generally not taken a strict approach with regard to the *form* of the written consent, as least with respect to named plaintiffs.[9]  The statute itself does not mandate any particular form, and in general, all that is required is a signed statement indicating the plaintiff's intent, and consent, to participate as a plaintiff in the collective action.  In *Ketchum v. City of Vallejo*, No. S-05-1098, 2007 WL 4356137, at *2 (E.D.Cal. Dec. 11, 2007), for example,

_____

[9]The reason for strictly adhering to the consent requirement, the court stated, was illustrated in *Harkins*, where, eight years after the suit was filed, class counsel, who had previously been sanctioned for his conduct of litigation in other cases, still had not produced written consents from 18 of the 21 named plaintiffs, some of whom had been added late, and some of whom, though they appeared in the original complaint, disappeared when the complaint was amended.  385 F.3d at 1101.

- 24 -

the court held that certain named plaintiffs' actions were commenced on the dates on which they filed declarations with the court expressly indicating their intent to be plaintiffs in the action. *See also Bonilla v. Las Vegas Cigar Co.*, 61 F.Supp.2d 1129, 1139 (D.Nev. 1999) (noting that plaintiffs could have filed written consents, or "simply sign[ed] the Complaint").

In the case at bar, plaintiff Mendez filed a signed affirmation with the Court on December 19, 2003 (Dkt. #15), in support of plaintiffs' first motion for class certification Rule 23 and for court approval for this action to proceed as a collective action under the FLSA.[10]  In that affirmation, Mendez stated, *inter alia*, "I am the Named Plaintiff in the above-captioned matter."  The caption also named Mendez as plaintiff, "on behalf of himself and all other employees similarly situated."

That clearly indicates Mendez's understanding that he was consenting to be a plaintiff in this collective action under the FLSA.  Accordingly, I conclude that it satisfied the written-consent requirement of § 216(b).

In addition, as with the filing of the simultaneous summary judgment and class certification motions, this issue is not directly before me.  Defendants have not moved to dismiss Mendez's collective-action claims, but to decertify the class.  In light of my findings concerning this matter, I conclude that the failure to file a formal consent form for Mendez does not amount to an error on counsel's part that demonstrates their inadequacy to serve as counsel for the class.[11]

---

[10]That motion was denied without prejudice on February 26, 2004.  Plaintiffs renewed their motion for class certification in January 2005, and that motion was granted.

[11]Since no issue concerning the statute of limitations is directly before me, I make no findings and draw no conclusions concerning whether any portion of Mendez's claims are time-

(continued...)

**E. Failure to Prosecute**

Defendants also contend that, in addition to the various alleged failures and errors recited above, class counsel have simply done very little to prosecute this action.  In particular, they assert that class counsel have done virtually nothing to move this case along since the Court's November 22, 2005 decision on the class certification and partial summary judgment motions.

The Court is certainly very familiar with this action, and while it does appear that the case could at times have been pursued with more vigor, I do not believe that all the delays in this case can justifiably be laid at the feet of class counsel, or that those delays are inexcusable.  There have been some settlement negotiations, which unfortunately have not borne fruit, as well as disputes about a number of matters.  Not everything that has taken place during this litigation is necessarily reflected on the Court's docket sheet, and to the extent that there have been delays, I believe that class counsel are no more blameworthy than are defendants and their attorneys.

**II. Whether Individual Issues Predominate over Class Issues**

Apart from the alleged inadequacy of class counsel, defendants also contend that decertification is warranted because individual issues predominate over classwide issues, so that this action does not satisfy the requirement of Rule 23(b)(3) that "questions of law or fact common to class members predominate over any questions affecting only individual members ... ."  Although

---

[11](...continued)

barred.  *See Ketchum*, 2007 WL 4356137, at *2 (plaintiffs' FLSA actions were deemed commenced as of dates that they filed sworn declarations demonstrating their intent to be plaintiffs in collective action, but they could only recover damages for violations occurring within two or three years prior to those dates).

the Court considered, and rejected, this same argument in its decision certifying the class, *see* 232 F.R.D. at 92-94, defendants argue that since that decision was issued, it has become clear that individual issues predominate here.  Defendants also contend that the Second Circuit's decision in *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008), has further demonstrated the inappropriateness of class certification in cases involving individualized factual determinations.

In *McLaughlin*, the Court of Appeals ordered decertification of a class under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), because "numerous issues in th[e] case [we]re not susceptible to generalized proof but would require a more individualized inquiry," which led the court to "conclude that the predominance requirement of Rule 23 ha[d] not been satisfied."  *Id.* at 234.

The fact that *McLaughlin* was decided in the context of a RICO claim, however, renders it of limited value here.  The court's decision in *McLaughlin* was based to a great extent on the requirement that a plaintiff alleging mail or wire fraud as the predicate act for a civil RICO claim demonstrate that he relied on the defendant's misrepresentation.  With respect to that element, the court stated that "reliance on the misrepresentation [which in *McLaughlin* involved cigarette manufacturers' alleged representations that 'light' cigarettes were 'healthier' than 'full-flavored' cigarettes] cannot be the subject of general proof."  *Id.* at 223.  The court stated that individualized proof would be "needed to overcome the possibility that a member of the purported class purchased Lights for some reason other than the belief that Lights were a healthier alternative–for example, if

a Lights smoker was unaware of that representation, preferred the taste of Lights, or chose Lights as an expression of personal style." *Id.*[12]

The case at bar does not present the same difficulties. As the Court stated in its prior decision granting class certification, the fact that "some issues related to damages may require individualized proof ... is not a basis for finding that Rule 23(b)(3)'s predominance criterion has not been met." 232 F.R.D. at 93 (citing *In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 139 (2d Cir. 2001), *cert. denied*, 536 U.S. 917 (2002)). My conclusion that class certification is proper here is in accord with many other decisions from within this circuit. *See*, *e.g.*, *Frederick v. Dreiser Loop Supermarket Corp.*, No. 06 Civ. 15341, 2008 WL 4724721, at *1 (S.D.N.Y. Oct. 24, 2008) (finding that "Plaintiffs have made a sufficient factual showing that they ... were denied overtime wages pursuant to a common policy," and that "common questions concerning Defendants' alleged nonpayment of overtime wages predominate over those requiring individualized proof"); *Niemiec v. Ann Bendick Realty*, No. 04-CV-897, 2007 WL 5157027, at *10 (E.D.N.Y. Apr. 23, 2007) ("the court finds that the plaintiffs' claims that defendants violated the NYLL wage and overtime regulations are at the core of this litigation, and are not significantly diminished by

---

[12]Similarly, the court stated that individual proof would be needed to establish civil RICO's "loss causation" element, *i.e.*, that the defendant's misrepresentations caused the plaintiff to suffer economic loss. The plaintiffs' theory was that the defendants' misrepresentation that "lights" were healthier led to an increased market demand for light cigarettes, which drove up the price of lights, with the result that the plaintiffs were, in effect, overcharged, in the sense that they paid more for lights than they otherwise would have had the truth about lights been known. Observing that "individuals may have relied on defendants' misrepresentation to varying degrees in deciding to purchase Lights; some may have relied completely, some in part, and some not at all," the Second Circuit stated that "establishing the first link in the causal chain–that defendants' misrepresentation caused an increase in market demand–would require individualized proof, as any number of other factors could have led to this increase." *Id.* at 226.

defendants [individualized defenses]"); *Mentor v. Imperial Parking Systems, Inc.*, 246 F.R.D. 178, 184 (S.D.N.Y. Sept. 27, 2007) ("The Court finds that questions of law and fact–namely, the existence of an unlawful policy of denying overtime pay to employees–predominate over questions affecting only individual members"); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (stating that issues concerning whether class members were unlawfully not paid minimum wage or overtime "are about the most perfect questions for class treatment" and that "[s]ome factual variation among the circumstances of the various class members is inevitable and does not defeat the predominance requirement"). *See also Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 163 (S.D.N.Y. 2008) ("courts in the Second Circuit routinely certify class action[s] in FLSA matters so that New York State and federal wage and hour claims are considered together") (quoting *Duchene v. Michael L. Cetta, Inc.*, 244 F.R.D. 202, 204 (S.D.N.Y. 2007)) (collecting cases).

In short, I am no more persuaded now by defendants' arguments concerning this issue than I was when I issued my Decision and Order certifying the class. Neither the applicable law nor the relevant facts have changed in any way that warrants the Court rethinking that decision. *See Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (court should generally avoid "revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice") (internal quotation marks omitted).

**III. CPLR § 901(b)**

Defendants also contend that plaintiffs cannot maintain a class action on their Labor Law claims, by virtue of § 901(b) of the New York Civil Practice Law and Rules. That section provides that "[u]nless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action." Since the Labor Law provides for the recovery of liquidated damages, defendants argue, class certification is precluded.

In response, plaintiffs contend, first, that § 901 is a procedural provision that has no application here. Dkt. #222 at 22 (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Since plaintiffs' memorandum was filed, however, the Court of Appeals for the Second Circuit has held that "CPLR 901(b) is analogous to a statute of limitations, which is substantive for Erie purposes." *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 549 F.3d 137, 143 (2d Cir. 2008). Although, on May 4 of this year, the Supreme Court granted certiorari in *Shady Grove*, *see* 129 S.Ct. 2160, partly to decide whether "a state legislature [can] properly prohibit the federal courts from using the class action device for state law claims," 2009 WL 344618, at *1, for now, at least, *Shady Grove* remains the law in this circuit.

Plaintiffs also argue–correctly–that § 901 generally does not bar a class action as long as the class members either waive their claims for liquidated damages or opt out. For that reason, the argument that § 901(b) bars class actions for Labor Law claims "has been repeatedly rejected by the courts." *Klein v. Ryan Beck Holdings, Inc.*, No. 06 Civ. 3460, 2007 WL 2059828, at *3 (S.D.N.Y.

July 20, 2007) (citations omitted).  *See, e.g., Freeman v. Hoffman-LaRoche, Inc.*, No. 07-1503, 2007 WL 4440875, at *4 (D.N.J. Dec. 18, 2007); *Lewis v. National Financial Systems, Inc.*, No. 06-1308, 2007 WL 24455130, at *7 (E.D.N.Y. Aug. 23, 2007); *de la Cruz v. Gill Corn Farms, Inc.*, No. 03-CV-1133, 2005 WL 5419056, at *2 (N.D.N.Y. Jan. 25, 2005).

Accordingly, I will deny defendants' motion to decertify plaintiffs' Labor Law claims, with the understanding that, barring an intervening change in the law from the Supreme Court or otherwise, any plaintiff who does not opt out of the class will have to waive any claims to liquidated damages under the Labor Law.

## CONCLUSION

Defendants' motion to decertify plaintiffs' Rule 23 class (Dkt. #216) is denied.

Plaintiffs are hereby directed to file, no later than twenty (20) days after the date of issuance of this Decision and Order, a motion for an order approving the form and contents of a notice, and the manner of issuance of such notice, to class members, pursuant to Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure.  Defendants shall file a response within fourteen (14) days after the filing of plaintiffs' motion.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       August 20, 2009.